**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **WATKINS LAW & ADVOCACY, PLLC** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No: 17-1974 (ABJ)** |
| | ) |
| **DEPARTMENT OF VETERANS AFFAIRS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, by undersigned counsel, move for summary judgment in this action brought under the Freedom of Information Act ("FOIA") and Administrative Procedure Act ("APA"), challenging the responses by the Department of Veterans Affairs ("VA"), the Federal Bureau of Investigation ("FBI"), the Department of Justice Office of Information Policy ("OIP"), on behalf of the United States Attorney General ("OAG"), and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") with respect to FOIA requests to those agencies, and/or components of those agencies.  Accompanying this filing is a supporting memorandum, supporting declarations and a proposed order.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: _____/s/_____
JEREMY S. SIMON, D.C. Bar # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
WATKINS LAW & ADVOCACY, PLLC      )
                                          )
                **Plaintiff,**      )
         **v.**                  )  **Case No: 17-1974 (ABJ)**
                                            )
**DEPARTMENT OF VETERANS AFFAIRS, et al.,**  )
                                          )
                **Defendants.**    )
_____ )

**DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendants respectfully submit this Statement of

Material Facts Not in Genuine Dispute in support of Defendants' Motion for Summary

Judgment.

**Requests to the Department of Veterans Affairs ("VA")**

1. On October 14, 2015, Mr. Watkins submitted a FOIA request to the VA (referred to

in the Complaint as the "First FOIA Request") seeking:

> all records (including all amendments, supplements, exhibits, and addenda thereto) which
> set out or reflect the VA's approved agency decision-making procedures concerning
> whether the name of a veteran is to be reported, identified, or otherwise referred for
> inclusion in the Mental Defective File of the National Instant Criminal Background
> Check System ("NICS") database (also known as the NICS Index Mental Defective
> Commitment File), in effect at any time during 2013 to the present, including but not
> limited to any directive, guidance, policy, instruction, manual, procedure, guideline,
> standard, internal advice, message, checklist, flow chart, and/or memorandum with
> respect thereto (e.g., setting forth the procedure by which the VA may make a
> determination that an individual is "incompetent" with respect to handling his or her
> benefit payments such that a fiduciary must be appointed, with the individual then facing
> prohibitions under the Brady Act); and

> all records, from 2010 to the present, indicating the total number of names of veterans
> reported, identified, or otherwise referred by the VA each year (or month or quarter) for
> inclusion in the Mental Defective File of the National Instant Criminal Background
> Check System ("NICS") database (also known as the NICS Index Mental Defective

Commitment File) (e.g., requester seeks summary records indicating the total number of veterans reported annually for inclusion in the Mental Defective File of NICS).

(Knight Decl. ¶ 4; Compl. ¶ 31 and Ex. 1 thereto)

2.  On November 11, 2015, Plaintiff submitted a second FOIA request to the VA

(referred to in the Complaint as the "Second FOIA Request") seeking:

> the comments submitted by the U.S. Department of Veterans Affairs ("VA") in response to the notice of proposed rulemaking from the U.S. Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms ("BATF"), published on September 6, 1996 at 61 FR 47095, Notice No. 839, RIN 1512-AB41, in which BATF proposed definitions to facilitate the implementation of the national instant criminal background check system ("NICS") required under the Brady Handgun Violence Prevention Act. On information and belief, the VA's comments were submitted between September 6, 1996 and December 5, 1996 (when the comment period closed).

(Knight Decl. ¶ 4; Compl. ¶ 36 and Ex. 4 thereto)

3.  In response to the two requests, searches were conducted by the VA Office of General Counsel ("VA OGC"), the Veteran Benefits Administration ("VBA"), and the VA Office Public and Intergovernmental Affairs ("OPIA").  (Knight Decl. ¶¶ 6-8)

4.  VA OGC, VBA and OPIA each separately responded to Plaintiff with a production of the non-exempt records that those components located.  (Knight Decl. ¶ 12)

5.  Plaintiff does not challenge any of the withholdings by VBA or OPIA on the records they produced in response to the FOIA requests.  (Knight Decl. ¶¶ 13, 19 and Ex. 1 hereto (email dated October 24, 2018))

6.  Plaintiff does not challenge the VA's search for records with respect to its response to the October 14, 2015 FOIA request to the VA.  (Knight Decl. ¶ 19 and Ex. 1 hereto)

7.  With respect to the VA FOIA request of October 14, 2015, Plaintiff only challenges certain withholdings of documents in full under Exemption 5 of FOIA in the productions made by VA OGC in response to that request.  (Knight Decl. ¶ 13 and Ex. 1 hereto)

8.   Plaintiff identified the documents withheld under Exemption 5 that it was challenging in an email dated October 24, 2018, and those documents are listed on the VA's *Vaughn* Index which is attached to the Knight Declaration accompanying this motion.  (Knight Decl. ¶ 13 and Ex. 1 hereto)

9.   Based on the language of Plaintiff's request, many (if not all) of the documents that the VA initially identified in its interim response letters as being withheld in full under Exemption 5, and which are being challenged by Plaintiff, are not responsive to the first VA FOIA request which, by its terms, sought records dating from 2013 that "set out or reflect" the VA's "approved agency decision-making procedures" and did not seek internal emails regarding the development of agency decision-making procedures of the type identified by VA as being withheld under Exemption 5.  (Knight Decl. ¶ 15)

10.   To the extent the Court deems the challenged records as being responsive to the request, they were properly withheld in full by the VA under Exemption 5.  (Knight Decl. ¶¶ 16-17 and accompanying *Vaughn* Index).

11. With respect to the November 11, 2015, FOIA request to the VA, Plaintiff's October 24, 2018 email stated that Plaintiff's only challenge to the VA's response to this request concerned its search and, "only to the extent any comments in addition to the December 23, 1996 letter from Brown to Ficaretta were not disclosed" in response to this request.  (Knight Decl. ¶ 19 and Ex. 1 hereto)

12. The VA searched all locations likely to have information dating back to the 1996-1997 time period and did not locate any comments that could be described as following from the referenced December 23, 1996 letter.   (Knight Decl. ¶ 20)

**Requests to the Federal Bureau of Investigation ("FBI")**

13. By email dated October 21, 2015, Mr. Watkins submitted a FOIA request to the FBI

(referred to in the Complaint as the "Fourth FOIA Request") seeking:

   a.   each Memorandum of Understanding entered into between the United States
        Department of Veterans Affairs ("VA") and the United States Department of
        Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), concerning or
        relating to submission by the VA to the DOJ/FBI of information on persons to
        be prohibited from purchasing a firearm, including but not limited to: the
        Memorandum of Understanding Between the United States Department of
        Veterans Affairs and the Federal Bureau of Investigation Regarding the
        National Instant Criminal Background Check System, dated February 27,
        2012 (including all amendments, supplements, exhibits, and addenda thereto);

   b.   all records (including all amendments, supplements, exhibits, and addenda
        thereto) which set out or reflect the providing of information (such as names
        of individuals) by the VA to the DOJ/FBI for inclusion in the National Instant
        Criminal Background Check System ("NICS"), including but not limited to
        the NICS Index Mental Defective Commitment File, including but not limited
        to any directive, guidance, policy, instruction, manual, procedure, guideline,
        standard, internal advice, message, checklist, flow chart, and/or memorandum
        with respect thereto;

   c.   to the extent the FBI itself has custody or control of such records, all
        communications made by or on behalf of the United States Attorney General
        ("OAG") to the VA requesting or requiring that the VA submit to the
        DOJ/FBI information on persons to be prohibited from purchasing a firearm,
        and all communications from the VA in response thereto (on information and
        belief, OAG made such a request to the VA in 1998) (this request does not
        seek the subsequent communications that actually provide information
        concerning particular individuals).

(Compl. ¶ 49; Hardy Decl. ¶ 5) The FOIA request specifically stated that "none of the

aforementioned requests seek disclosure of the  names of individuals provided by the VA to the

FBI, nor do they seek any information protected under the Privacy Act."  (Hardy Decl. ¶ 5)

14. The FBI's search for records responsive to the first part of this request identified 12

pages, consisting of a February 27, 2012 Memorandum of Understanding, which was released in

full to Plaintiff.  (Hardy Decl. ¶ 10)

15. The FBI's search for records responsive to the second part of this request identified 59 pages, which were withheld in full under Exemption 7(E) of FOIA because the documents provided information about capabilities and operating procedures for the FBI's National Instant Criminal Background Check System ("NICS") that would risk circumvention of the law if released.  (Hardy Decl. ¶¶ 12, 42)

16. On further review, the FBI determined that the 59 pages initially identified as responsive and withheld under Exemption 7(E) of FOIA were in fact not responsive to the FOIA request because the material does not address any process for inclusion into the NICS of information provided by the VA to the FBI under the Memorandum of Understanding produced in response to first part of the FOIA request.  (Hardy Decl. ¶ 41)

17. In November 2018, the FBI received from OIP as a consultation a document called "Guidance to Agencies Regarding Submission of Relevant Federal Records to the NICS" that had been referred by the VA and provided proposed redactions of the name and identifying information of an FBI support employee under Exemptions 6, 7(C)  and certain email addresses under Exemption  7(E) of FOIA to OIP.   (Hardy Decl. ¶ 43)

18. The FBI searched all locations reasonably likely to have responsive records.   (Hardy Decl. ¶¶ 31-40)

19.  The FBI produced to Plaintiff all reasonably segregable, non-exempt responsive documents subject to FOIA.  (Hardy Decl. ¶ 53)

**FOIA Request to Office of Attorney General**

20.  On October 21, 2015, Mr. Watkins submitted a FOIA request to the Office of Attorney General ("OAG") via the Office of Information Policy eFOIA Portal (referred to in the Complaint as the "Third FOIA Request") seeking:

1. all communications made by or on behalf of the United States Attorney General ("OAG") to the United States Department of Veterans Affairs ("VA") requesting or requiring that the VA submit to the United States Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), information on persons to be prohibited from purchasing a firearm, and all communications from the VA in response thereto (on information and belief, OAG made such a request to the VA in 1998) (this request does not seek the subsequent communications that actually provide information concerning particular individuals);

2. each Memorandum of Understanding entered into between the VA and the DOJ/FBI concerning or relating to submission by the VA to the DOJ/FBI of information on persons to be prohibited from purchasing a firearm, including but not limited to: the Memorandum of Understanding Between the United States Department of Veterans Affairs and the Federal Bureau of Investigation Regarding the National Instant Criminal Background Check System, dated February 27, 2012;

3. all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the providing of information (such as names of individuals) by the VA to the DOJ/FBI for inclusion in the National Instant Criminal Background Check System ("NICS"), including but not limited to the NICS Index Mental Defective Commitment File, including but not limited to any directive, guidance, policy, instruction, manual, procedure, guideline, standard, internal advice, message, checklist, flow chart, and/or memorandum with respect thereto.

(Compl. ¶ 42 and Ex. 8-9 thereto).

21. The request also stated that the requester was not "seek[ing] disclosure of the names of individuals provided by the VA to the FBI, nor do they seek any information protected under the Privacy Act."  (*Id.*)

22. By letter dated November 20, 2015, the Office of Information Policy ("OIP") acknowledged Plaintiff's FOIA request on behalf of OAG.  (Brinkmann Decl. ¶ 4)

23. By letter dated September 22, 2017, OIP provided a final response to Plaintiff advising that records searches had been completed, and that no records responsive to Plaintiff's request were located.  (Brinkmann Decl. ¶ 5)

24. Based on the nature of the records requested in the FOIA request, OIP determined

that any potentially responsive records would most likely consist of formal communications that would be located in a records repository called the Departmental Executive Secretariat. (Brinkman Decl. ¶ 10)

25. The Departmental Executive Secretariat ("DES") is the official records repository of OAG, and maintains records of all formal, unclassified correspondence sent to or from that Office, which would include correspondence between OAG and other DOJ entities, such as the FBI, and other Executive Branch agencies, such as the VA.  (Brinkman Decl. ¶ 12)

26. OIP's search of the DES was conducted using the search terms and search term combinations (1) NICS plus "Veterans Affairs," (2) Firearm plus "Veterans Affairs," (3) Firearms plus "Veterans Affairs," and (4) "National Instant Criminal Background Check System."  (Brinkmann Decl. ¶ 14)

27. OIP searched the entire DES electronic database, meaning the search was conducted with no restriction on the start date parameter and covered all records entered into the system through September 2017 when OIP issued its final response to Plaintiff.  (Brinkman Decl. ¶ 14)

28. No records responsive to the request still in the custody of DOJ were located as a result of the search conducted by OIP.  (Brinkmann Decl. ¶ 15)

29. OIP also took the additional step of reaching out to FBI to determine whether FBI, in its own records searches in response to Plaintiff's request, had located any records that reflected OAG participation in communications with the VA on the matter that was the subject of the FOIA request.  (Brinkmann Decl. ¶16)

30. In response, the FBI confirmed that it located no records implicating OAG involvement in relevant communications, which was consistent with the result of OIP's searches of the DES.  (Brinkmann Decl. ¶ 16)

31. OIP searched all locations reasonably likely to have responsive records.  (Brinkmann Decl. ¶¶ 10, 16)

32. By letter dated December 10, 2018, OIP released to Plaintiff the document called "Guidance to Agencies Regarding Submission of Relevant Federal Records to the NICS" with redactions under Exemption 6, 7(C) and 7(E) pursuant to a consultation with the FBI. (Brinkmann Decl. ¶ 7)

**FOIA Request to Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")**

33. On October 21, 2015, Mr. Watkins submitted a FOIA request to ATF (referred to in the Complaint as the "Fifth FOIA Request") seeking:

1.  each Memorandum of Understanding or other agreement entered into between the United States Department of Veterans Affairs ("VA") and the United States Department of Justice ("DOJ"), Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), concerning or relating to submission by the VA to the DOJ/ATF of information on persons to be prohibited from purchasing a firearm (including all amendments, supplements, exhibits, and addenda thereto);

2.  all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the providing of information (such as names of individuals) by the VA to the DOJ/ATF, for example for inclusion in the National Instant Criminal Background Check System ("NICS"), including but not limited to the NICS Index Mental Defective Commitment File, including but not limited to any directive, guidance, policy, instruction, manual, procedure, guideline, standard, internal advice, message, checklist, flow chart, and/or memorandum with respect thereto;

3.  to the extent the ATF itself has custody or control of such records, all communications made by or on behalf of the United States Attorney General ("OAG") to the VA requesting or requiring that the VA submit to the DOJ/ATF information on persons to be prohibited from purchasing a firearm, and all communications from the VA in response thereto (on information and belief, OAG made such a request to the VA in 1998) (this request does not seek the subsequent communications that actually provide information concerning particular individuals).

(Compl. ¶ 54 and Ex. 19-20 thereto)

34. The request also stated that the requester was not "seek[ing] disclosure of the names of individuals provided by the VA to the ATF, nor do they seek any information protected under the Privacy Act." (*Id.*)

35. On November 11, 2015, Plaintiff submitted a FOIA request to ATF (referred to in the Complaint as the "Sixth FOIA Request") seeking:

> copies of the eleven (11) comments submitted to the Chief, Regulations Branch, Bureau of Alcohol, Tobacco and Firearms ("BATF"), U.S. Department of the Treasury, in response to BATF's notice of proposed rulemaking published on September 6, 1996 at 61 FR 47095, Notice No. 839, RIN 1512-AB41, in which BATF proposed definitions to facilitate the implementation of the national instant criminal background check system ("NICS") required under the Brady Handgun Violence Prevention Act. [On information and belief, the comments were submitted between September 6, 1996 and December 5, 1996 (when the comment period closed). On information and belief, six comments were submitted by Federal agencies including two comments from agencies within the U.S. Department of Justice (DOJ) (the Immigration and Naturalization Service and the Office of Policy Development), the U.S. Department of State (Office of Passport Policy and Advisory Services), the U.S. Department of Veterans Affairs, the U.S. Department of Defense, and the U.S. Department of Health & Human Services (Substance Abuse and Mental Health Services Administration), while five comments were submitted on behalf of State agencies.]

(Compl. ¶ 61 and Ex. 24 thereto)

36. On November 12, 2015, ATF received a FOIA referral from the Department of Treasury, Tax and Trade Bureau (TTB), requesting that ATF review and provide a direct response to the requester. The referral, dated November 11, 2015, requested the identical information as the FOIA sent by Mr. Watkins, on November 11, 2015, to ATF. (Siple Decl. ¶ 5) That referral is referred to in the Complaint as the "Seventh FOIA request." (Compl. ¶ 68)

37. Following a search for documents responsive to the November 11, 2015 request,

ATF, by letter dated, October 3, 2017, released 30 pages of documents responsive to both Mr. Watkins FOIA request to ATF, dated November 11, 2015, and the TTB referral, dated November 12, 2015.  (Siple Decl. ¶¶ 7-14)

38.  The release consisted of 9 pages released in full and 21 pages released in part with withholdings pursuant to Exemption (b)(6).  (Siple Decl. ¶ 14)

39.  By letter dated July 3, 2018, ATF released in full, with the Exemption (b)(6) redactions removed, the 30 pages of documents previously released in part on October 3, 2017. (Siple Decl. ¶ 16)

40.  By letter dated, October 5, 2017, following a search for records responsive to the October 21, 2015 request, ATF identified 4 documents responsive to the request, which consisted of 27 pages, withheld in full pursuant to Exemption (b)(5).  (Siple Decl. ¶ 15)

41.  The documents withheld under Exemption (b)(5) were pre-decisional, deliberative documents consisting of:  a draft Memorandum of Agreement; a draft internal briefing paper; a draft DOJ letter; and draft internal DOJ guidance.  (Siple Decl. ¶¶19-29)

42.  By email dated October 24, 2018, Plaintiff confirmed that it was not challenging any aspect of ATF's response to the November 11, 2015 request (including the TBB referral). (Ex. 1 hereto)

43.  By email dated October 24, 2018, Plaintiff confirmed that the only issue it was challenging as to ATF's response to the October 21, 2015 request was ATF's withholding in full of the internal briefing document.  (Ex. 1 hereto)  As to that document, Plaintiff contends that segregable portions could have been disclosed.  (*Id.*)

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/
JEREMY S. SIMON
D.C. Bar # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WATKINS LAW & ADVOCACY, PLLC** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No: 17-1974 (ABJ)** |
| | ) |
| **DEPARTMENT OF VETERANS AFFAIRS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

This action was brought under the Freedom of Information Act ("FOIA") and Administrative Procedure Act ("APA"), challenging the responses by the Department of Veterans Affairs ("VA"), the Federal Bureau of Investigation ("FBI"), the Department of Justice Office of Information Policy ("OIP"), on behalf of the United States Attorney General ("OAG"),[1] and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") with respect to FOIA requests to those agencies, and/or components of those agencies. The Complaint asserts counts under FOIA against each of these agencies and/or components of the agencies, and also asserts counts under the APA based on the same alleged conduct.

Prior to the filing of this motion, the parties conferred and Plaintiff has narrowed the issues in dispute in an email dated October 24, 2018,[2] to the following:

---

[1]    The Department of Justice's Office of Information Policy ("OIP") is responsible for processing FOIA requests for records within OIP and from six senior leadership offices of the Department of Justice, specifically the Offices of the Attorney General ("OAG"), the Deputy Attorney General ("ODAG"), and the Associate Attorney General ("OASG"), and the Offices of Legislative Affairs ("OLA"), Legal Policy ("OLP"), and Public Affairs ("PAO"). (Brinkmann Decl. ¶ 1)

[2]    The October 24, 2018 email, with certain extraneous information redacted, is attached to this motion as Exhibit 1.

VA:  Two requests were submitted to the VA, one dated October 14, 2015 and the other dated November 11, 2015.  With respect the first of these requests, Plaintiff only is challenging the VA's invocation of Exemption 5 of FOIA to documents identified in the search conducted by the VA Office of General Counsel ("OGC") that the VA OGC has since determined are not responsive to the request.  Plaintiff is not challenging the search with respect to that request, or the response by other components within the VA to the request.  As to the second request, Plaintiff only is challenging the adequacy of the VA's search as to that request with respect to the VA's alleged failure to locate one set of "comments" that Plaintiff speculates may exist.

FBI:  Plaintiff challenges the FBI's search for responsive records and invocation of Exemption 7(E) to withhold 59 pages of records that the FBI subsequently determined were not responsive to the request.  To the extent Plaintiff challenges redactions under Exemption 6, 7(C) and 7(E) on the document called "Guidance to Agencies Regarding Submission of Relevant Federal Records to the NICS" recently released by OIP after consultation with the FBI, those withholdings also are addressed below.

OAG:  No records subject to FOIA were located in response to the OAG request and Plaintiff challenges the adequacy of the search conducted by OIP in response to that request.

ATF:  Two requests were submitted to ATF, one dated October 21, 2015, and the other dated November 11, 2015.  In addition, ATF received a referral from the Tax and Trade Bureau of the U.S. Department of Treasury ("TTB"), that was identical to the November

11, 2015, request directed to ATF.[3]   Plaintiff is not challenging any aspect of ATF's response to the November 11, 2015 request, or to the referral made by TTB to ATF. Plaintiff challenges ATF's response to the October 21, 2015 request only with respect to ATF's withholding in full under Exemption 5 of one document (an internal briefing document).   Plaintiff does not challenge ATF's search in connection with any of the requests.

Accordingly, Defendants are limiting this motion to addressing only the issues that Plaintiff has identified in its October 24, 2018 email as remaining at issue in this case.  Defendants reserve the right to address any other issues should Plaintiff take a different position in its opposition to this motion.[4]  In the event Plaintiff is still pursuing alternative claims under the APA with respect to these remaining issues, Defendants address Plaintiff's purported APA claims below as well.

---

[3]     The Complaint purports to assert claims under FOIA and the APA based on the FOIA request directed to TTB.  (Compl. ¶¶ 68, 150, 155)   The Department of Treasury, however, is not a Defendant in this action and, therefore, Plaintiff cannot pursue a claim based on that request in this action.  Nevertheless, this issue is moot because Plaintiff confirmed in an email dated October 24, 2018, that it is not challenging ATF's response to the November 11, 2015 request, or to the request referred by TTB to ATF.  (Ex. 1 hereto).

[4]     As the D.C. Circuit has explained, "a motion for summary judgment cannot be 'conceded' for want of opposition." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016).  However, this does not mean "that the Court must assess the legal sufficiency of each and every exemption invoked by the government in a FOIA case, regardless of whether the requester contests the government's invocation of that exemption. . . . Where the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction" and "there is simply no dispute to resolve."  *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017); *but see Parker v. U.S. Immigration & Custom Enforcement*, 238 F. Supp. 3d 89, 97 (D.D.C. 2017) (stating that the court still must "conduct an independent evaluation to determine whether the record and any undisputed material facts justify granting summary judgment").

## **FACTUAL BACKGROUND**

Defendants refer the Court to the accompanying Statement of Material Facts Not in Genuine Dispute ("SOF") for the factual background of this matter as regards the processing of the FOIA requests at issue.

By way of further background, the FOIA requests at issue seek information regarding the process by which the VA provides information to the FBI for inclusion of veterans in the National Instant Criminal Background Check System ("NICS").  The NICS is a national system that checks available records on persons who may be disqualified from receiving firearms. Specifically, it is a computerized background check system designed to respond instantly on most background check inquiries, which allows the Federal Firearm Licensees ("FFLs") to receive an almost immediate response for information on either: if a prospective buyer is eligible to buy firearms (e.g. ensuring the customer does not have a criminal record or is not otherwise ineligible to make such a purchase) or if the transfer of a firearm would be in violation of Section 922 (g) or (n) of Title 18, United States Code, or state law.  (Hardy Decl. ¶ 20)

A Memorandum of Understanding ("MOU") between the FBI and VA dated February 27, 2012, sets forth a procedure for the VA to provide names and other Privacy Act protected information of individuals who have certain mental health issues to be included in the NICS. (Hardy Decl. ¶¶ 13, 20)  In addition to the names of individuals, the information provided pursuant to the MOU includes other Privacy Act protected information, such as date of birth, social security number, sex, race, place of birth, height, weight, and category of prohibited or restricted person under 18 U.S.C. § 922.  (Hardy Decl. ¶ 20)

According to the Complaint, the FOIA requests in this action were submitted on behalf of a client "who is a veteran and who VA proposed to rate 'incompetent for VA purposes'"

(Compl. ¶ 7)   Plaintiff has described the purpose of this action as seeking "to shed light on the rulemaking process through which alleged *financial* incompetency was brought within the scope of the Brady Act as well as inter-agency agreements related to allegedly *financially* incompetent veterans and the procedures by which such VA-identified individuals are reported to DOJ, FBI, and ATF."  (Compl. ¶ 30)

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248.  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

The "vast majority" of FOIA cases are decided on motions for summary judgment.  *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor* ("*CREW*"), 478 F. Supp. 2d 77, 80 (D.D.C. 2007). An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records and each

responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure.  *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations.  *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Media Research Ctr.*, 818 F. Supp. 2d at 137.   "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"   *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## **ARGUMENT**

The FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under the FOIA and the FOIA claim is moot.  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008).  As demonstrated below, Defendants have satisfied their obligation to conduct adequate searches for records responsive to Plaintiff's FOIA requests to the extent

challenged by Plaintiff (*i.e.*, VA, FBI and OAG requests only) and properly withheld documents pursuant to Exemption 5 (VA and ATF) and Exemption 6, 7(C), and 7(E) (FBI) of FOIA to the extent the documents are actually responsive to the requests (which VA and FBI denies) and challenged by Plaintiff as described in Plaintiff's email dated October 24, 2018.

I.    **VA, FBI and OIP (on behalf of OAG) Conducted Searches Reasonably Calculated to Uncover Responsive Records.**

   **A.  Legal Standard**

Under the FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").   Once an agency demonstrates the adequacy of its search, the agency's position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).   Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *Oglesby*, 920 F.2d at 67 n.13.   "Agency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence and discoverability of other documents." *Chamberlain v. U.S. Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997).

   **B.  The VA Conducted A Reasonable Search For Responsive Records**

In an email dated October 24, 2018, Plaintiff stated, with respect to the November 11, 2015 request (referred to as the "Second FOIA Request" in the Complaint), that it "contests the scope of search conducted by VA only to the extent any comments in addition to the December 23, 1996 letter from Brown to Ficaretta were not disclosed."   (Ex. 1 hereto)   In that regard,

Plaintiff explained that "the final sentence of that letter states: "'The Veterans Health Administration is in the process of reviewing the definition of 'unlawful user of or addicted to any controlled substance,' and we will forward any comments in this regard in the near future.'" (*Id.*)   Thus, Plaintiff apparently believes that the Veterans Health Administration may have forwarded "any comments" that would be responsive to this request subsequent to December 23, 1996, that Plaintiff says were not produced to Plaintiff or accounted for in VA's *Vaughn* Index.

As explained in the accompanying Knight Declaration, in responding to the issue raised in Plaintiff's October 24, 2018 email, VA reexamined the only sources for material dating back to the 1996-1997 time period and no items that could be described as comments to the December 23, 1996 letter could be identified.   (Knight Decl. ¶ 20)   Accordingly, the document that Plaintiff speculates may exist was not located in VA's expansive search for responsive records.

Plaintiff's speculation that such "comments" were in fact issued within the time period of the FOIA request by itself is not a basis to call into question the adequacy of the VA's search. Even if the "comments" about which Plaintiff hypothetically existed, moreover, it is well settled that a search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured").   Rather, a search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68.

An agency, moreover, is not required to examine "virtually every document in its files" to locate responsive records."   *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994; *see also Hall v. U.S. Dep't of Justice*, 63 F. Supp. 2d 14, 17-18 (D.D.C. 1999) (finding that agency

need not search for records concerning subject's husband even though such records may have also included references to subject).  Rather, as here, it is appropriate for an agency to search for responsive records in accordance with the manner in which its records are maintained. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Finally, it is worth observing that the November 11, 2015, request sought the comments submitted by the VA in response to the notice of proposed rulemaking from ATF, published on September 6, 1996, and that Plaintiff believed "the VA's comments were submitted between September 6, 1996 and December 5, 1996 (when the comment period closed)".   (Compl. ¶ 36 and Ex. 4 thereto)  Accordingly, it is unlikely that "comments" dating after December 23, 1996, would be responsive to Plaintiff's request in any event.

For all of these reasons, summary judgment should be granted as to the adequacy of VA's search to the extent challenged by Plaintiff.

### C.  The FBI Conducted A Reasonable Search For Responsive Records

Plaintiff challenges the FBI's search with respect to all three items of the FOIA request issued to the FBI.  As set forth more fully in the Statement of Facts accompanying this motion, the request to the FBI sought:  (a) each Memorandum of Understanding entered into between the VA and the DOJ/FBI, concerning or relating to submission by the VA to the DOJ/FBI of information on persons to be prohibited from purchasing a firearm, including but not limited a Memorandum of Understanding dated February 27, 2012; (b) all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the providing of information (such as names of individuals) by the VA to the DOJ/FBI for inclusion in the National Instant Criminal Background Check System ("NICS"), including but not limited to the NICS Index Mental Defective Commitment File; and (c) to the extent the FBI itself has custody

or control of such records, all communications made by or on behalf of the OAG to the VA requesting or requiring that the VA submit to the DOJ/FBI information on persons to be prohibited from purchasing a firearm, and all communications from the VA in response thereto. (SOF ¶ 13)   The request specifically excluded from its scope the actual names and other Privacy Act protected information transferred by the VA to the DOJ/FBI for inclusion in the NICS.   (*Id.*)

In response to the first and third parts of the request, the FBI contacted the FBI's Criminal Justice Information Services ("CJIS") Division in Clarksburg, West Virginia.   (Hardy Decl. ¶¶ 22, 37-38)   That Division was identified as the Division likely to have responsive information because it is where the NICS is located.   (Hardy Decl. ¶ 37)   CJIS located 12 pages of material responsive to the first part of the request – which was the February 27, 2012 MOU – but did not locate any other MOUs or material responsive to the third part of the request.   (Hardy Decl. ¶ 37)

The FBI subsequently contacted CJIS to verify the results of its original search for the first and third part of the request.   Specifically, the original author of the MOU was identified and contacted to determine if any other responsive records might exist.   The author confirmed that the 12 pages of records are the only records available in the CJIS archives responsive to the first part of Plaintiff's request, and that there is no alternative system or archive where records responsive to the first or third part of the request would be stored.   (Hardy Decl. ¶ 38)   The FBI also checked its FOIPA Document Processing System ("FDPS") to see if similar information had been processed in connection with any prior FOIA requests and no documents were located through that search.   (Hardy Decl. ¶¶ 32-33)   Finally, for the first and third part of the request (as well as the second part of the request), the FBI also conducted a "string" index search of its Automated Case System ("ACS") and Sentinel using the following search terms: "Veterans

Affairs Gun," "VA Gun," "Veterans Affairs," "VA," "National Instant Criminal Background Check Veterans Affairs," "National Instant Criminal Background Check VA," "NICS Veterans Affairs," and "NICS VA."  (Hardy Decl. ¶ 40)  No additional responsive records were located as a result of this search.

The second part of the request sought all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the providing of information (such as names of individuals) by the VA to the DOJ/FBI for inclusion in the National Instant Criminal Background Check System ("NICS"), including but not limited to the NICS Index Mental Defective Commitment File.   In light of the express language at the end of the request excluding the names of individuals (and other Privacy Act protected information) from the scope of the request, the FBI understood the second part of the request to seek documents regarding the process by which the VA provided names (or other information) to the FBI for inclusion in NICS.  (Hardy Decl. ¶ 12)  The FBI asked CJIS to conduct a search for responsive records, searched the FDPS, and also ran the above-referenced string index search of ACS and Sentinel. (Hardy Decl. ¶¶ 34, 39, 40)

The process by which the VA provides names (or other information) to the FBI for inclusion in NICS is described in the MOU that the FBI produced in response to the first part of the request.  The MOU describes a process whereby the VA provides encrypted CD-Roms to the FBI with the data addressed in the MOU not less than on a quarterly basis.   (Hardy Decl. ¶¶ 12-13) As part of its search for responsive documents, the FBI contacted the individual at the FBI who received the CD-Roms from the VA pursuant to the MOU and that individual confirmed that there is no official correspondence that the VA provides with the transmittal of the CD-Roms.   (Hardy Decl. ¶¶ 13, 39)

In addition, as a result of the FBI's search of FDPS, the FBI identified 59 pages of what it initially viewed as responsive records that had previously processed under the FOIA.  (Hardy Decl. ¶ 12).  However, on further review, the FBI determined the records were not responsive because they pertained to the NICS generally and not to the specific process referenced in the FOIA request.  (Hardy Decl. ¶ 41)   The string index search of ACS and Sentinel also did not identify any responsive records.  (Hardy Decl. ¶ 40).

The second part of the request also mentions the NICS Index Mental Defective Commitment File.  That file is a listing of names and biographic identifiers of individuals who are prohibited from possessing a firearm as a result of mental health issues.  (Hardy Decl. ¶¶ 13, 21) Accordingly, the FBI determined that file to be outside the scope of Plaintiff's request because the request specifically stated that it was not seeking the production of names of individuals (or other Privacy Act protected information) provided by the VA to the FBI.  (Hardy Decl. ¶ 13)   Ultimately, the FBI found no records responsive to the second part of the request, beyond the MOU itself that was released in response to the first part of the request.  (Hardy Decl. ¶ 13)

### D. OIP Conducted A Reasonable Search For Responsive Records To The OAG Request.

As discussed more fully in the accompanying Brinkmann declaration, the FOIA request to OAG was processed by OIP.   (Brinkmann Decl. ¶ 1)  Because of the nature of the records sought – correspondence between OAG and the VA, memoranda of understanding between the FBI and the VA, and records reflecting the transfer of information between the FBI and the VA – OIP determined that these types of communications would most likely occur through formal institutional correspondence, and that any potentially responsive records of these formal

communications would be located in a records repository called the Departmental Executive Secretariat ("DES").  (Brinkmann Decl. ¶ 10)

DES is the official records repository of OAG and maintains records of all formal, unclassified correspondence sent to or from OAG.  (Brinkmann Decl. ¶ 13)  DES maintains records of both intra- and extra-agency correspondence, and thus would include correspondence between OAG and other DOJ entities, such as the FBI, as well as other Executive Branch agencies, such as the VA.  (Brinkmann Decl. ¶ 12)    Accordingly, if OAG had formally communicated with another Executive Branch Department (in this instance the VA), such a communication should have been accompanied by formal correspondence that would have been stored in the database and which would be retrievable through that database to the extent still retained under applicable retention schedules.  (Brinkmann Decl. ¶¶ 12-13)

OIP's search of the DES was conducted using search terms and search term combinations as follows:  (1) NICS plus "Veterans Affairs," (2) Firearm plus "Veterans Affairs," (3) Firearms plus "Veterans Affairs," and (4) "National Instant Criminal Background Check System." (Brinkmann Decl. ¶ 14)  OIP determined that these keyword combinations were reasonably tailored to locate any responsive records regarding formal communications with the VA on the topics identified in the OAG FOIA request.  (Brinkmann Decl. ¶ 14)   As a result of these keyword searches, OIP located a reference to one record, which was a correspondence control sheet related to the 1998 OAG correspondence to the VA referenced in the OAG FOIA request. (Brinkmann Decl. ¶¶ 5, 15)   The underlying document to which that control sheet pertained, however, was no longer in the custody of DOJ and would have been transferred to the National Archives and Records Administration ("NARA"), pursuant to NARA-approved records disposition schedules.  (Brinkmann Decl. ¶¶ 5, 15)  No other responsive records to any part of

the request were located as a result of the keyword search.  *See Kim v. DOI,* 859 F. Supp. 2d 13, 21 (D.D.C. 2012) (an agency's "duty of production under the FOIA is limited to the production of responsive documents that were in its possession at the time the FOIA request was made"); *Landmark Legal Found. v. EPA,* 272 F. Supp. 2d 59, 66 (D.D.C. 2003) (The "FOIA does not impose a document retention requirement on agencies").

Following that search, OIP took the additional step of reaching out to FBI to determine whether FBI, in its own search in connection with the FOIA request to the FBI, had located any records that reflected OAG participation in communications with the VA.  (Brinkmann Decl. ¶ 16)  The FBI confirmed to OIP that it had not located any records implicating OAG involvement in such communications.  (Brinkmann Decl. ¶ 16)

OIP has thus conducted a reasonable search for responsive documents.  *See Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (observing that the adequacy of an agency's search "is measured by the reasonableness of the effort in light of the specific request"); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, No. 11-1971 (JEB), 2012 WL 5928643, at *4 (D.D.C. Nov. 27, 2012) (finding that agency's methodology was "sound" where agency compared the FOIA request to its program offices' functions in order to determine which component offices to search).  Accordingly, summary judgment should be granted as to the adequacy of OIP's search.

## II.    VA And ATF Properly Withheld Information Under Exemption 5 To The Extent Deemed Responsive.

### A.  Standard For Exemption 5

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be

privileged in the civil discovery context, including materials protected by the attorney-client privilege and the executive deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).

### 1.    The Deliberative Process Privilege

The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears, Roebuck*, *supra,* 421 U.S. at 151-53; *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *CREW v. U.S. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009).

To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative. *Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas*, 617 F.2d at 868; *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). For a document to be pre-decisional, it must be antecedent to the adoption of an agency policy. *See Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C.Cir.1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]"). To show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of

that process.'"  *Heggestad v. U.S. Dep't of Justice,* 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting

*Coastal States Gas,* 617 F.2d at 868); *see Gold Anti-Trust Action Committee ("GATA") v. Board*

*of Governors,* 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("even if an internal discussion does

not lead to adoption of a specific government policy, its protection under Exemption 5 is not

foreclosed as long as the document was generated as part of a definable decision-making

process.").

Thus, a document is "'predecisional' if it precedes, in temporal sequence, the 'decision'

to which it relates.'"  *Abtew v. DHS,* 808 F.3d 895, 898 (D.C. Cir. 2015). Exemption 5, however,

is not dependent on whether a final decision ultimately resulted from the employee's

deliberations.  Were it otherwise, the purpose of the exemption would be defeated because "[a]t

the time of writing the author could not know whether the decisionmaking process would lead to

a clear decision, establishing the privilege, or fizzle, defeating it." *Access Reports,* 926 F.2d at

1196.    The focus of Exemption 5 instead is whether the document was part of the

decisionmaking process.  *Id.  see also Nat'l Archive v. CIA,* 752 F.3d 460, 463 (D.C. Cir. 2014)

("The term 'deliberative' in this context means, in essence, that the communication is intended to

facilitate or assist development of the agency's final position on the relevant issue."); *Huntington*

*v. Dep't of Commerce,* 234 F. Supp. 3d 94, 110 (D.D.C. 2017) ("The challenged documents

precede the final patentability decision and are part of the process by which that decision is

made; they therefore are predecisional and deliberative.")

A document is "deliberative" if it "'reflects the give-and-take of the consultative

process.'"  *McKinley v. FDIC,* 744 F. Supp. 2d 128, 138 (D.D.C. 2010).  Thus, "'pre-decisional

materials are not exempt merely because they are pre-decisional; they also must be part of the

agency give-and-take of the deliberative process by which the decision itself is made.'"  *Jowett,*

*Inc. v. U.S. Dep't of the Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C Cir. 1975)).   The privilege protects factual material if it is "inextricably intertwined" with deliberative material, *FPL Group v. IRS,* 698 F. Supp. 2d 66, 81 (D.D.C. 2010), or if disclosure "would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'"  *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987). "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'"  *Access Reports*, 926 F.2d at 1195.

### 2.      Attorney Client Privilege

"Like the deliberative process privilege, the attorney-client privilege helps improve the quality of agency decision making by safeguarding the free flow of information that is a necessary predicate for sound advice." *Murphy v. Tenn. Valley Auth.,* 571 F. Supp. 502, 506 (D.D.C. 1983).  The privilege applies "'primarily to facts divulged by client to attorney, but … also includes opinions from attorney to client based on those facts,'" *id.* (quoting *Brinton v. Dep't of State,* 636 F.2d 600, 605-06 (D.C. Cir. 1980)), "as well as communications between attorneys that reflect client-supplied information."  *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,* 384 F. Supp. 2d 100, 114 (D.D.C. 2005).

The attorney-client privilege is "not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Coastal States,* 617 F.2d at 862.  The agency has an affirmative obligation to show that the communication was, and continues to be, confidential, *id.* at 863;

however, limited circulation within an agency to employees involved in a matter for which advice is sought does not breach confidentiality. *Murphy,* 571 F. Supp. at 506. "The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees." *Elec. Privacy,* 384 F. Supp. 2d at 114. In addition, the privilege may be asserted over documents reflecting communications between non-lawyers that reflect privileged information. *See, e.g., Evans v. Atwood*, 177 F.R.D. 1, 6 (D.D.C. 1997) (privilege may be asserted over documents reflecting communications between non-lawyers when the documents reflect an "agency official's communicating with her colleague what she intends to tell an agency lawyer, or what the lawyer has told her, when both officials and the lawyer are working for a common employer").

### B. VA Properly Invoked Exemption 5

VA has claimed exemption 5 over the documents reflected on the detailed *Vaughn* Index that accompanies the Watkins declaration submitted in support of this motion to the extent it pertains to the VA. As that *Vaughn* Index reflects, the withheld documents are pre-decisional and deliberative and, in many instances, reflect attorney-client communications or the discussion of legal advice or analysis. As a threshold matter, these documents are not even responsive to the FOIA requests. The VA inadvertently identified these documents as responsive to the first request to the VA (i.e., the October 14, 2015 request), but on further review, has determined that to be in error.

The first request to the VA sought "all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the VA's approved agency decision-making procedures concerning whether the name of a veteran is to be reported, identified, or otherwise referred for inclusion in the Mental Defective File of the National Instant Criminal

Background Check System ("NICS") database (also known as the NICS Index Mental Defective Commitment File), in effect at any time during 2013 to the present."   The remainder of the first request sought "all records, from 2010 to the present, indicating the total number of names of veterans reported, identified, or otherwise referred by the VA each year (or month or quarter) for inclusion in the Mental Defective File of the National Instant Criminal Background Check System ("NICS") database (also known as the NICS Index Mental Defective Commitment File) (e.g., requester seeks summary records indicating the total number of veterans reported annually for inclusion in the Mental Defective File of NICS)."

Thus, the first portion of the request sought records from 2013 to the date of the request, and was limited to records that "set out or reflect" the VA's "approved agency decision-making procedures."   That part of the request did not seek internal or inter-agency communications regarding the development of agency decision-making procedures.  Indeed, the date-range of the request post-dates the MOU of February 2012 between the VA and the FBI.

Nevertheless, the VA inadvertently identified in its interim release letters as "responsive" to this request documents that pre-dated 2013 as well as documents reflecting agency deliberations concerning the implementation of aspects of the Brady Act that preceded "approved agency decision-making procedures," including deliberations preceding the February 2012 MOU.   Thus, by virtue of the date-range, draft and/or pre-decisional nature of the records as described in the *Vaughn* Index, most (if not all) of the documents challenged by Plaintiff are not responsive to the request.[5]

---

[5]   Moreover, two items on the *Vaughn* – item 59 of Interim Decision 5 and item 23 of Interim Decision 6 – do not even pertain to the subject matter of the request and are non-responsive for that additional reason.  *See Vaughn* Index accompanying Knight Declaration (entry 52 (item 59 of Interim Decision 5) and entry 65 (item 23 of Interim Decision 6)).

Thus, as a threshold matter, Plaintiff has no right, based on the FOIA request at issue, to seek in this litigation the compelled disclosure of withheld documents that fall outside the scope of that request.  This is not a situation where the agency released the non-responsive record and is litigating over the appropriateness of a redaction on an already-released document.  *See, e.g., Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 77 (D.D.C. 2017) ("once an agency has deemed a document to be responsive and has produced it to the requester, regardless of whether it actually is or not, the agency may not redact information without sufficiently justifying such redaction pursuant to one of FOIA's statutory exemptions").  Here, the documents have not been released and thus, at the summary judgment stage, the VA should be entitled to litigate all grounds for the withholding of the challenged documents, including the issue of actual responsiveness.

However, to the extent the Court considers the documents responsive by virtue of the documents being identified by the VA in its interim release letters, they have been properly withheld in full under Exemption 5 because they fall into one or both of the following two categories encompassed within Exemption 5:  they are pre-decisional and deliberative and/or protected by the attorney-client privilege.

As described in the accompanying Knight declaration, the challenged documents were obtained through a search of documents within the VA Office of General Counsel.  Thus, the documents involve communications with attorneys and, as described in the *Vaughn* Index, many reflect the provision of legal advice or a legal assessment regarding a particular issue.   Such documents are both subject to protection under the deliberative process privilege and the

attorney-client privilege.[6]    To the extent the documents do not reflect legal advice, they are nevertheless subject to Exemption 5 of FOIA because they are pre-decisional and deliberative. As described on the *Vaughn* Index, the challenged documents consist of such things as draft letters, draft memoranda, meeting agendas, notes of internal or inter-agency meetings regarding the development of policy, and briefing papers.  *See, e.g., Judicial Watch, Inc. v DOE*, 310 F. Supp. 2d 271, 317 (D.D.C. 2004) (protecting briefing materials prepared for Secretary of the Interior).  Accordingly, the VA has properly withheld the challenged documents – in the event the Court were to deem them responsive – under Exemption 5.

### C.    ATF Properly Invoked Exemption 5

Plaintiff challenges ATF's withholding in full of one document described in the accompanying Siple declaration as an "[i]nternal briefing paper providing talking points and legal guidance from the Office of the Chief Counsel to ATF's executive staff regarding the applicability of Federal firearms disabilities to VA adjudications."  (Siple Decl. ¶¶ 19, 30)   The internal briefing paper provided talking points/legal guidance about the Federal firearms disability, 18 U.S.C. § 922(g)(4), and its effect on veterans ability to purchase a firearm.   An attorney in the Office of the Chief Counsel prepared the internal briefing paper/legal guidance for use in advising ATF executive staff on two issues of concern to Congress: NICS and the ability of veterans to purchase a firearm if prohibited by 18 U.S.C. §922(g)(4).   (Siple Decl. ¶ 28)  Accordingly, the document was properly withheld under Exemption 5. S*ee, e.g. ACLU. v*

---

[6]     As explained in the Knight declaration, no meaningful, non-exempt information could be segregated and released from the withheld documents. (Knight Decl. ¶ 18)  The VA, moreover, does not understand Plaintiff to be seeking the names and contact information of the individuals on these particular documents.  (*Id.*)  Nevertheless, to the extent such information is sought and alleged to be reasonably and meaningfully segregable, it would be properly withheld under Exemption 6 of FOIA because the individuals have a privacy right in that information and the information would not shed light on VA's operations. (*Id.*)   Thus, the VA properly withheld the documents in full.

*DHS*, 738 F. Supp. 2d 93, 112 (D.D.C. 2010) (concluding that talking points are also predecisional because "the document itself suggests that a public statement was anticipated at the time of its creation, and given that no official statement has yet been made, the talking points remain ripe recommendations that are ready for adoption or rejection by the Department"); *Judicial Watch,* 310 F. Supp. 2d at 317.

In addition, ATF reviewed the briefing paper at issue and determined that there was no non-exempt portion that could be meaningfully segregated.  (Siple Decl. ¶ 30)  As the District Court recognized, "agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).   Accordingly, ATF properly withheld the entire document under Exemption 5.

**III.**  **FBI Properly Applied Exemption 6, 7(C) and 7(E) to the Recently Released Document and 7(E) To The Previously Identified 59 Pages To The Extent Deemed Responsive.**

**A.**  **Exemption 7 Threshold Requirement**

Under Exemption 7, agencies can withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" would create certain statutorily enumerated harms.  5 U.S.C. § 552(b)(7).  As the Supreme Court has explained, "law enforcement includes not just the investigation and prosecution of offenses that have already been committed, but also proactive steps designed to prevent criminal activity and to maintain security."  *Milner v. Dep't of Navy*, 562 U.S. 562 (2011) (Alito, J., concurring); *see also PEER v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014).  The "law" to be enforced within the meaning of the term "law enforcement purposes" includes both civil and criminal statutes as well as those

statutes authorizing regulatory proceedings. *PEER*, 740 F.3d at 203.   The documents at issue concern the NICS, which the FBI operates to ensure those lawfully prohibited from purchasing firearms do not do so.   (Hardy Decl. ¶¶ 41, 44)   Accordingly, the threshold requirement for withholding records under FOIA Exemption 7 is met here.   (*Id.*)

### B.   Exemption 6 and 7(C)

Exemption (b)(6) and Exemption 7(C) both protect information that, if disclosed, would invade the privacy of third parties.   Exemption 7(C), however, provides a lesser standard in that it requires simply a showing of an "unwarranted" invasion of personal privacy, as opposed to Exemption 6's required showing of a "clearly unwarranted" invasion of personal privacy.   *Braga v. FBI,* 910 F. Supp. 2d 258, 267 (D.D.C. 2012).   Accordingly, although case law interpreting Exemption (b)(6) remains relevant, the Court need only focus on the Exemption 7(C) standard because Exemption 7(C)'s requirement that records be compiled for law enforcement purposes is satisfied here.

Exemption 7(C) allows an agency to withhold "investigatory records compiled for law enforcement purposes, or information which if written would be contained in such records, but only to the extent that production of such records or information would . . . constitute an unwarranted invasion of personal privacy." *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 893 (D.C. Cir. 1995) (quoting 5 U.S.C. § 552(b)(7)(C)).   The courts have construed this provision as permitting exemption if the privacy interest at stake outweighs the public's interest in disclosure.[7]   *Id.*   In order to trigger the balancing of public interests against private

---

[7]     Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (*quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).   The Court

interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dept. of Justice,* 475 F.3d 381, 366 (D.C. Cir. 2007) (*citing Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

To determine whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy" for purposes of Exemption 7(C), the Court "must 'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'" *Roth v. DOJ*, 642 F.3d 1161, 1174 (D.C. Cir. 2011). It is well recognized that "'the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.'" *Id.* Thus, not only the targets of law-enforcement investigations, but also witnesses, informants and investigating agents have a 'substantial interest' in ensuring that their relationship to the investigations 'remain secret.'" *Id.*

In its consultation with OIP concerning the "Guidance to Agencies Regarding Submission of Relevant Federal Records to the NICS" (herein "DOJ's NICS Guide"), FBI proposed the withholding under Exemption 6 and 7(C) of the name and email address of an FBI support employee, which was redacted in the document as released by OIP. (Hardy Decl. ¶¶ 46-47; Brinkmann Decl. ¶ 7) This support employee was assigned to handle tasks related to submission of data to NICS. (Hardy Decl. ¶ 47) He or she was, and possibly is, in a position of access to information regarding official law enforcement investigations, and therefore could

---

has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

become a target of harassing inquiries for unauthorized access to investigations and/or FBI investigative data if his/her identity was released.  Thus, this individual maintains substantial privacy interest in not having his/her identity disclosed in this context, whether or not he/she is currently employed by the FBI. (Hardy Decl. ¶ 47) In contrast, the FBI concluded no public interest would be served by disclosing the identity of this FBI support employee to the general public because his/her identity would not, itself, significantly increase the public's understanding of the FBI's operations and activities.  Accordingly, after balancing this employee's substantial privacy interest against the non-existent public interest, the FBI properly protected the name and identifying information of this support employee pursuant to Exemptions (b)(6) and (b)(7)(C). (Hardy Decl. ¶ 47)

### C.    Exemption 7(E) – Investigative Techniques and Procedures

FOIA Exemption 7(E) authorizes agencies to withhold "records or information compiled for law enforcement purposes [that] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

"[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).  The D.C. Circuit has also stated that "under [its] precedents Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will

25

be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP*, 562 F.3d at 1194).

"An agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002). Even if withheld documents "are not 'how-to' manuals for law-breakers, the exemption is broader than that." *Mayer Brown LLP*, 562 F.3d at 1192–93.

The FBI applied Exemption 7(E) on pages 17 and 18 of DOJ's NICS Guide to protect sensitive internal law enforcement email addresses utilized by the FBI to pursue its law enforcement mission. (Hardy Decl. ¶ 51) The email addresses that were withheld are not for a particular FBI employee but instead are for a drop box that the FBI utilizes to receive information from DOJ component agencies for inclusion in NICS. (*Id.*) As explained in the accompanying Hardy Declaration, the release of the email drop box information could be exploited by bad actors to interfere with the FBI's law enforcement function and the operation of NICS. (*Id.*) Accordingly, the FBI properly withheld this information under Exemption 7(E).

In addition, the FBI invoked Exemption 7(E) in connection with 59 pages of documents that initially identified as responsive to the request. Upon further review, however, the FBI determined that the 59 pages were not responsive because it relates to various internal policies and procedures pertaining generally to the FBI's use of the NICS for its own purposes. (Hardy Decl. ¶ 41) Specifically, the material is intended for use by personnel using the NICS and includes detailed descriptions of the NICS such as standard operating procedures for the system

and descriptions of the system's capabilities.  (*Id.*)   The 59 pages discuss processes generally and do not address specifically any process for inclusion into the NICS of information provided by the VA to the FBI under the February 2012 MOU.  (*Id.*)  Accordingly, these pages have been properly withheld as non-responsive to the request.

To the extent the Court deems these pages responsive to the request because they were initially (and erroneously) identified as such by the FBI, the FBI has properly withheld these pages under Exemption 7(E).  Disclosure of the information contained on these pages would allow individuals to know the capabilities of the NICS as well as the standard operating procedures personnel use to conduct NICS operations.  (Hardy Decl. ¶ 42)  This knowledge could allow individuals to circumvent the NICS and therefore reduce the system's effectiveness in checking available records on persons who may be disqualified from purchasing firearms. (*Id.*)   Accordingly, to the extent the Court deems these records responsive, they have been properly withheld under Exemption 7(E).

## IV.    Defendants Complied with FOIA's Segregability Requirement

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).   "Agencies are entitled to a

presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).   Defendants have satisfied there obligation to disclose reasonably segregable information on the documents challenged by Plaintiff.  (Hardy Decl. ¶ 53; Knight Decl. ¶ 18; Siple Decl. ¶ 30)

## V.    Plaintiff's APA Claims Are Not Actionable And Should Be Dismissed.

For each request at issue, the Complaint asserts an alternative claim under the APA.  To the extent Plaintiff is still pursuing such claims, they should be dismissed because a Plaintiff cannot re-characterize its FOIA claims as one for relief under the APA.

The APA provides for judicial review of agency action when it is made reviewable by statute or when there is "no other adequate remedy in a court."  5 U.S.C. § 704; *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).   Generally, if Congress has provided a separate cause of action or an independent review procedure, then APA review is precluded.  *Feinman v. F.B.I.*, 713 F.Supp.2d 70, 76 (D.D.C. 2010) (citing *El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). The alternative relief provided by the cause of action or procedure does not need to be identical to preclude APA review, but it must be adequate and of the "same genre."  *Feinman*, 713 F.Supp.2d at 76 (quoting *El Rio*, 396 F.3d at 1272).

When an APA claim "[seeks] remedies made available by FOIA," the APA remedies are of the "same genre" as those available under FOIA, and thus the claim is outside of the judicial review provided for under the APA.  *Feinman*, 713 F.Supp. 2d at 76; *see also Kenney v. U.S. Dep't of Justice*, 603 F.Supp.2d 184, 190 (D.D.C. 2009) (finding that FOIA precludes APA claims that an agency did not respond to FOIA request in an adequate amount of time).   "The FOIA imposes no limits on court's equitable powers in enforcing its terms."  *Payne Enterprises,*

*Inc. v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988).   Therefore, when a plaintiff seeks equitable relief under the APA because of a denied FOIA request, "the statutory and equitable remedies available . . . under FOIA would provide the same relief" as those under the APA.  *Feinman*, 713 F.Supp.2d at 77.

Here, Plaintiff seeks equitable remedies under both the FOIA and APA that are indistinguishable, and thus the APA claims should be dismissed either for lack of jurisdiction or failure to state a claim.   While the distinction between grounds for dismissal for lack of jurisdiction or failure to state a claim has not always been clear, *Sierra Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011) (citing *Oryszak v. Sullivan*, 576 F.3d 522, 527 (D.C. Cir. 2009)), district courts in the D.C. Circuit have routinely ruled that they lack subject matter jurisdiction when an APA claim is precluded by an adequate FOIA remedy.  *See e.g.*, *Feinman v. F.B.I.*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) (citing numerous cases in which district courts decided the matter on the basis of subject matter jurisdiction); *Kenney,* 603 F. Supp. 2d at 190.

At no point does the Complaint cite any independent grounds for the purported claims under the APA.   Since the Court is not limited in its ability to impose equitable remedies under FOIA, *Payne Enterprises*, 837 F.2d at 494, and the Plaintiff seeks the same remedies for his APA claim, the APA claim should be dismissed for lack of subject matter jurisdiction or failure to state a claim.  *Feinman*, F. Supp. 2d at 76; *Kenney*, 603 F. Supp. 2d at 190.

In addition, to the extent Plaintiff bases its claim on section 706(1) of the APA – agency action that is unlawfully withheld – that claim is moot because the agency has now processed and released all segregable, non-exempt records subject to FOIA. APA review of agency inaction in the administrative process is unavailable, moreover, because, in the face of agency inaction, a FOIA plaintiff retains the right to seek *de novo* review in federal court based on a

constructive exhaustion theory.  As in other contexts involving similar administrative exhaustion schemes, the private right of action afforded under FOIA precludes an APA claim for alleged improper handling by the agency of a FOIA request.  *See Smith v. Casellas,* 119 F.3d 33, 34 (D.C. Cir. 1997) ("Congress intended the private right of action provided for in section 706(f)(1) of the Act (42 U.S.C. § 2000e-5(f)(1))--under which an aggrieved employee may bring a Title VII action directly against his or her employer--to serve as the remedy for any improper handling of a discrimination charge by the EEOC."); *see also Wright v. Dominquez,* 2004 U.S. App. LEXIS 15239, at *2 (D.C. Cir. July 21, 2004) ("Federal employees such as appellant are not bound by the outcome of the EEOC's administrative process but are entitled to de novo review in district court regardless of that outcome" and "[t]his de novo review provides an adequate remedy . . . for complaints about the EEOC's administrative process, precluding an APA challenge to the EEOC's procedures."); *Ward v. EEOC,* 719 F.2d 311, 313-14 (9th Cir. 1983) ("The EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit" and thus "the statutory requirement that there be 'no other adequate remedy in a court' is not met.").

The unavailability of APA review in such contexts is well settled.  In *Council of and for the Blind v. Regan,* 709 F.2d 1521 (D.C. Cir. 1983), plaintiffs alleged that the agency violated the APA by failing to respond to their administrative complaints about alleged discriminatory conduct by grant recipients' in the use of agency funds    *Id.* at 1524.  The Court dismissed the APA claim because the underlying substantive statute provided an adequate remedy, namely, individual lawsuits against the grant recipients on the merits of the discrimination claims.  *Id.* at 1531-33.  In *Garcia v. Vilsack,* 563 F.3d 519 (D.C. Cir. 2009), the Court held that *Council* applied equally when the underlying claim of discrimination raised in the pending (and not-

acted-upon) administrative complaint was directed against the agency itself.  *Id.* at 525.  Plaintiff

thus has no APA claim for any of the Defendants alleged failure to meet certain deadlines during

the administrative process.

### CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant

summary judgment in favor of Defendants as to all remaining claims in this case.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ Jeremy S. Simon
JEREMY S. SIMON, D.C. Bar # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

Counsel for Defendant