## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
WATKINS LAW &                       )
ADVOCACY, PLLC,                     )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        Civil Action No. 17-1974 (ABJ)
                                    )
UNITED STATES DEPARTMENT            )
OF VETERANS AFFAIRS, *et al.*,      )
                                    )
                Defendants.         )
_____)

## MEMORANDUM OPINION

In October and November 2015, plaintiff Watkins Law & Advocacy, PLLC, submitted

seven Freedom of Information Act ("FOIA") requests to the United States Department of Veterans

Affairs ("VA"), the United States Department of Justice ("DOJ"), the Federal Bureau of

Investigation ("FBI"), and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")

seeking records concerning "inter-agency agreements related to allegedly *financially* incompetent

veterans . . . [who] are reported to DOJ, FBI, and ATF," pursuant to Public Law 103-159, also

known as the Brady Handgun Violence Prevention Act of 1993 ("the Brady Act"). *See* Compl.

[Dkt. # 1] ¶¶ 1, 30 (emphasis in original). On September 25, 2017, plaintiff filed this suit, alleging

that "[s]ix of the seven requests [had] not received any response determination," and demanding

that the agencies produce the responsive records as required by FOIA, 5 U.S.C. § 552. *Id.*

¶¶ 2–3. The agencies then processed plaintiff's requests, and eventually defendants moved for

summary judgment on December 10, 2018. Defs.' Mot. for Summ. J. [Dkt. # 20] ("Defs.' Mot.");

Defs.' Statement of Material Facts Not in Genuine Dispute [Dkt. # 20]; Mem. in Supp. of Defs.'

Mot. for Summ. J. [Dkt. # 20] ("Defs.' Mem.") [Dkt. # 20]. Plaintiff opposed that motion, and

cross-moved for summary judgment. Pl.'s Cross-Mot. for Summ. J. [Dkt. # 21] ("Pl.'s Cross-Mot."); Pl.'s Mem. in Opp. to Defs.' Mot. & in Supp. for Pl.'s Cross-Mot. [Dkt. # 21-1]. Four FOIA requests remain in dispute. For the reasons that follow the Court will deny in part and grant in part defendants' motion, and it will grant in part and deny in part plaintiff's motion.

## BACKGROUND

The Gun Control Act of 1968 prohibits certain individuals, including convicted felons, fugitives from justice, and persons "adjudicated as a mental defective or . . . committed to a mental institution," from possessing firearms. 18 U.S.C. § 922(g). "The Brady Handgun Violence Prevention Act of 1993 required the Attorney General to establish a 'national instant criminal background check system,' known as the NICS, to search the backgrounds of prospective gun purchasers for criminal or other information that would disqualify them from possessing firearms." *Nat'l Rifle Ass'n of Am., Inc. v. Reno*, 216 F.3d 122, 125 (D.C. Cir. 2000), citing § 103(b), Pub. L. No. 103–159, 107 Stat. 1536. "The FBI developed the system through a cooperative effort with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and local and state law enforcement agencies." *About NICS*, FBI, https://www.fbi.gov/services/cjis/nics/about-nics (last visited Sept. 26, 2019).

Plaintiff states that on September 6, 1996, ATF initiated a rulemaking process "proposing to amend the regulations to provide definitions for the categories of persons prohibited from receiving or possessing firearms." 61 Fed. Reg. 47,095 (Sept. 6, 1996); *see* Compl. ¶ 22. The purpose of the rulemaking was to "facilitate the implementation of the national instant criminal background check system (NICS) required under the Brady Handgun Violence Prevention Act." 61 Fed. Reg. at 47,095. Under the section titled "Persons Who Have Been Adjudicated as Mental Defectives or Been Committed to a Mental Institution," ATF explained that the agency had "examined the definition of 'mental incompetent' used by the Department of Veterans Affairs,"

which "covers persons who because of injury or disease lack the mental capacity to contract or manage their own affairs." *Id.* at 47,097, citing 38 C.F.R. § 3.353. ATF proposed a regulation that would adopt the VA's definition. *Id.*

After a period of public comment, ATF adopted its final rule on June 27, 1997. *See* 62 Fed. Reg. 34,634 (June 27, 1997). The final rule defined "adjudicated as a mental defective" in relevant part as, "[a] determination by a court, board, commission, or other lawful authority that a person, as a result of . . . mental illness, incompetency, condition, or disease . . . [l]acks the mental capacity to contract or manage his own affairs." *Id.* at 34,637. Plaintiff points out that the final notice discussed several public comments, including one from the VA:

> In its comment, the U.S. Department of Veterans Affairs correctly interpreted the proposed definition of ''adjudicated as a mental defective'' to mean that any person who is found incompetent by the Veterans Administration under 38 C.F.R 3.353 will be considered to have been adjudicated as a mental defective for purposes of the [Gun Control Act]. Section 3.353 provides that a mentally incompetent person is one who, because of injury or disease, lacks the mental capacity to contract or manage his or her own affairs.

*Id.*; *see* Compl. ¶ 23.

In 1998, the FBI and the VA entered into a data-sharing Memorandum of Understanding ("MOU") pursuant to the Brady Act whereby the VA provided the FBI with the names of veterans who fall within the category of "mental defective" for inclusion in NICS. *See* 1998 MOU, Ex. 5 to Pl.'s Opp. to Defs.' Mot. for Summ. J. [Dkt. # 22-6] ("1998 MOU") at 2. A subsequent 2012 MOU between the FBI and the VA re-affirmed many of the data-sharing policies contained in the 1998 MOU but also introduced some additional terms. *See* 2012 MOU, Ex. 4 to Pl.'s Opp. to Defs.' Mot. for Summ. J. [Dkt. # 22-5] ("2012 MOU"). The 2012 Agreement provides that "VA-provided data may also be used for ATF inquiries in connection with civil or criminal law enforcement activities pursuant to Title 28, Code of Federal Regulations (C.F.R.), Section

25(6)(j)(2)." *Id.* at 1. In 1997, the Brady Act was amended to enact changes to NICS. *See* NICS Improvement Amendments Act of 2007, No. 110-180, H.R. 2640, 110th Cong. (2007–2008).

In its complaint, plaintiff states that its "action seeks to shed light on the rulemaking process through which alleged *financial* incompetency was brought within the scope of the Brady Act as well as inter-agency agreements related to allegedly *financially* incompetent veterans and the procedures by which such VA-identified individuals are reported to the DOJ, FBI, and ATF." Compl. ¶ 30 (emphasis in original).

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a

reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire &*

*Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed."  *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption."  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).  Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## I.   The VA FOIA Request

### A.  The October 14, 2015 Request

On October 14, 2015, plaintiff submitted a FOIA request to the VA seeking the following records:

> all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the VA's approved agency decision-making procedures concerning whether the name of a veteran is to be reported, identified, or otherwise referred for inclusion in the Mental Defective File

of the National Instant Criminal Background Check System ("NICS") database (also known as the NICS Index Mental Defective Commitment File), in effect at any time during 2013 to the present, including but not limited to any directive, guidance, policy, instruction, manual, procedure, guideline, standard, internal advice, message, checklist, flow chart, and/or memorandum with respect thereto (e.g., setting forth the procedure by which the VA may make a determination that an individual is "incompetent" with respect to handling his or her benefit payments such that a fiduciary must be appointed, with the individual then facing prohibitions under the Brady Act); and

all records, from 2010 to the present, indicating the total number of names of veterans reported, identified, or otherwise referred by the VA each year (or month or quarter) for inclusion in the Mental Defective File of the National Instant Criminal Background Check System ("NICS") database (also known as the NICS Index Mental Defective Commitment File) (e.g., requester seeks summary records indicating the total number of veterans reported annually for inclusion in the Mental Defective File of NICS).

October 14, 2015 FOIA Request, Ex. 1 to Compl. [Dkt. # 1-1] ("Oct. 2015, VA FOIA Request").[1]

The VA directed its components, the VA Office of General Counsel ("VA OGC"), the Veterans Benefits Administration ("VBA"), and the VA Office Public and Intergovermental Affairs ("OPIA"), to conduct searches in response to the request. Decl. of Tracy Knight [Dkt. # 20-4] ("Knight Decl.") ¶¶ 6–8. Between November 2017 and April 2018, VA OGC, VBA, and OPIA responded separately to plaintiff with their production of non-exempt records. The agency produced some of the records in part, but withheld others in full pursuant to FOIA Exemption 5 under the deliberative process privilege and the attorney-client privilege. Id. ¶¶ 12, 15–17.

The VA insists that its withholdings are justified for two reasons. First, the agency states that upon further review, it has determined that the withheld records are not responsive to plaintiff's FOIA request after all. Id. ¶¶ 14–15 ("[T]he VA inadvertently identified in its interim

---

1    On November 11, 2015, plaintiff submitted a second FOIA request to the VA. Ex. 4 to Compl. [Dkt. # 1-4]. Plaintiff initially challenged the scope of the search, but later in its cross-motion for summary judgment it stated that this "request is no longer at issue." Pl.'s Cross-Mot. at 16–17.

release these documents as 'responsive' . . . as a threshold matter, these documents, on further review, are not responsive to the FOIA request."). Therefore, VA contends that plaintiff is not entitled to records that fall outside of the scope of its request. Defs.' Mem. at 19–20.

Second, the agency argues in the alternative, that if the Court considers the records responsive, they were nonetheless properly withheld under Exemption 5. *Id.* at 20–21. In support of its withholdings, the agency submitted the declaration of Tracy Knight, the VA's Information Specialist at VA OGC, and a *Vaughn* Index with a description of the ninety-four records withheld in full. Knight Decl. ¶¶ 1, 13; VA *Vaughn* Index [Dkt. # 20-4]. "In an effort to further narrow the scope of disputed records," plaintiff only challenges in its cross-motion the withholding of seventy-one records listed in the *Vaughn* Index as follows: 1, 3–12, 14–18, 21–26, 30, 31, 34, 35, 39–43, 46, 47, 49, 51, 56–61, 63, 65–77, and 79–94. Pl.'s Cross-Mot. at 16.

### 1. The disputed records are responsive.

The VA contends that the October 14, 2015 FOIA "request sought records from 2013 to the date of the request," and that "documents that pre-dated 2013" are not responsive. Defs.' Mem. at 19. The FOIA request seeks in relevant part:

> **all records** (including all amendments, supplements, exhibits, and addenda thereto) **which set out or reflect the VA's approved agency decision-making procedures** concerning whether the name of a veteran is to be reported, identified, or otherwise referred for inclusion in the Mental Defective File of the National Instant Criminal Background Check System ("NICS") database (also known as the NICS Index Mental Defective Commitment File**)**, **in effect at any time during 2013 to the present**, including but not limited to any directive, guidance, policy, instruction, manual, procedure, guideline, standard, internal advice, message, checklist, flow chart, and/or memorandum with respect thereto (e.g., setting forth the procedure by which the VA may make a determination that an individual is "incompetent" with respect to handling his or her benefit payments such that a fiduciary must be appointed, with the individual then facing prohibitions under the Brady Act) . . .

Oct. 2015, VA FOIA Request (emphasis added).

The VA interprets the language in bold to exclude documents that pre-date 2013, as well as those that "reflect[ ] agency deliberations concerning the implementation of aspects of the Brady Act that *preceded* 'approved agency decision-making procedures.'" Knight Decl. ¶ 15 (emphasis added). In its view, the FOIA request only sought records dated after 2013, because only those records could "set out" or "reflect" *approved* agency decisionmaking procedures delineated in the 2012 MOU. *See* Reply Mem. in Supp. of Defs.' Mot. for Summ. J. [Dkt. # 26] ("Defs.' Reply Mem.") at 3.

Plaintiff maintains that these records are responsive, because pre-2013 documents can "set out" or "reflect" approved agency decisionmaking procedures based on the 1998 MOU between the VA and FBI. *See* Pl.'s Reply Br. in Supp. of Pl.'s Cross-Mot. for Summ. J. at 3 [Dkt. #27] ("Pl.'s Cross-Mot. Reply") at 4–8. According to plaintiff, the 1998 MOU and the 2012 MOU contain "substantially similar purposes . . . similar terms concerning the veterans' data provided by VA to FBI . . . similar terms concerning the respective functions and responsibilities of VA and the FBI . . . [and] similar terms concerning restrictions with respect to data concerning veterans." *Id.* Therefore, plaintiff contends that many of the "approved agency decision-making procedures in effect at any time during 2013 to present" could in fact be "set out" or "reflect[ed]" in pre-2013 documents. *Id.*

The Court agrees with plaintiff. In determining the scope of a FOIA request, an agency has "a duty to construe a FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). The plain language of the request does not purport to limit the dates of the documents; it limits the procedures to which the documents pertain. To the extent records that pre-date 2013 "set out or reflect" procedures that were in effect in 2013, they fall within the request. So to the extent the 1998 MOU "set[s] out" *and* "reflect[s]" agency

decisionmaking procedures that were re-approved in 2013, those records should be produced.  *See* 2012 MOU; 1998 MOU.  This conclusion is further bolstered by the fact that the VA itself initially deemed these records responsive.

**2.  VA properly withheld the disputed records pursuant to FOIA Exemption 5.**

Because the contested records are responsive to the October 14, 2015 FOIA request, the Court must go on to address whether the VA properly withheld the records pursuant to FOIA Exemption 5.  *See* 5 U.S.C. § 552(b)(5) (2006).  The VA relies on both the deliberative process privilege and the attorney-client privilege to justify its withholdings.  Knight Decl. ¶¶ 16–17. Based on the Court's review of the VA's declaration and its *Vaughn* Index, it finds that the agency met its burden and that the withholdings are appropriate under FOIA Exemption 5.

*a.  FOIA Exemption 5*

FOIA Exemption 5 bars disclosure of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 522(b)(5).  A document may be properly withheld under Exemption 5 only if it satisfies "two conditions:  its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Exemption 5 encompasses evidentiary privileges "in the civil discovery context, including material that would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege."  *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989) (internal quotation marks omitted).  It also covers the deliberative process privilege which protects "documents reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9, quoting *Sears*, 421 U.S. at 151. To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States*, 617 F.2d at 866.

><ol type="i"><li>*The VA has properly asserted the attorney-client privilege for forty-three withheld records.*</li></ol>

The VA invoked the attorney-client privilege for all of the seventy-one withheld records in dispute. *See* VA *Vaughn* Index. The Court has reviewed the VA's *Vaughn* Index, along with its declaration, and it is satisfied that the attorney-client privilege applies to forty-three out of the seventy-one withheld records, specifically the records in the *Vaughn* Index numbered: 3–5, 8, 10, 14, 16, 25–26, 34, 39–40, 42–43, 46–47, 49, 51, 58, 60, 63, 66–74, 79–81, 83–90, 92, 94. Although Exemption 5 "does not itself create a government attorney-client privilege," the privilege

> has a proper role to play in exemption five cases . . . . In order to ensure that a client receives the best possible legal advice, based on a full and frank discussion with his attorney, the attorney-client privilege assures him that confidential communications to his attorney will not be disclosed without his consent. We see no reason why this same protection should not be extended to an agency's communications with its attorneys under exemption five.

*In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998), quoting *Mead Data Cent.*, 566 F.2d at 252. The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications

made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862. The privilege also protects communications from attorneys to their clients that "rest on confidential information obtained from the client." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997), quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). In the FOIA context, the agency is often the "client" and the agency's lawyers are the "attorneys" for purposes of the attorney-client privilege. *See In re Lindsey*, 148 F.3d at 1105, citing *Coastal States*, 617 F.2d at 863. Here, the VA would be the "client" and the VA's Office of General Counsel would be the VA's "attorneys" for purposes of the attorney-client privilege.

Here, the VA's *Vaughn* Index contains detailed descriptions that 1) identify the documents as communications originating from the VA OGC, thus meeting the threshold requirement that the record come from a government agency, *see* 5 U.S.C. § 552(b)(5), and 2) support the notion that those communications were made for the purpose of providing legal advice. The level of detail is exemplified in the two entries below:

> HIPAA Modification – Firearm Background Check System – email dated January 6, 2016, from OGC Chief Counsel, Melinda Perritano to OGC Supervisors – legal discussion to examine the HIPAA modification to strengthen the firearm background check system and how it relates to VA regulations such as 38 CFR 5701 and whether all Veterans with VA fiduciary are prohibited from possessing a firearm and whether VBA is now required to provide their names to NCIS.

*Vaughn* Index at 11 (referencing Doc. No. 67).

> HIPAA Modification – Firearm Background Check System – Email dated January 6, 2016 from OGC Chief Counsel, Melinda Perritano, to OGC components – OGC legal discussion on HIPAA modification to strengthen background check and how it relates to A regulations such as 38 CFR 5701.

*Vaughn* Index at 7 (referencing Doc. No. 49).

Additionally, the agency declarant asserts that, "[t]he documents withheld under this exemption contained confidential communications exchanged among VA staff and legal counsel,

and/or reflect communications among non-legal personnel regarding legal advice that had been received . . . [t]he disclosure of such communications would deprive VA staff, and the agency in general, of the benefit of confidential advice from VA attorneys." Knight Decl. ¶ 17.

Based on the descriptions contained in the VA's *Vaughn* Index and the statements by the agency declarant, the Court is satisfied that the documents at issue "relate[] to a legal matter for which the [VA] has sought professional advice." *Mead Data Cent.*, 566 F.2d at 252. Because the VA has provided detailed justifications to support a finding that these documents are protected by the attorney-client privilege and because the VA's declarations are "accorded a presumption of good faith," the Court finds that the forty-three records were properly withheld pursuant to FOIA Exemption 5. *See Safecard Servs., Inc.*, 926 F.2d at 1200. The remaining twenty-eight documents fall short of qualifying for the attorney-client privilege and will therefore be analyzed under deliberative process privilege.[2]

> ii. *The VA has properly asserted the deliberative process privilege for the remaining records.*

The deliberative process privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch*, 449 F.3d at 151. A document is predecisional if "'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Id.*, quoting *Coastal States*, 617 F.2d at 866. "[R]ecommendations, draft documents, proposals, suggestions, and other subjective documents

---

2     Within these twenty-eight documents, there are four documents that the Court will not analyze under deliberative process privilege. These are documents are: # 35, 56, 57, and 65. The VA's *Vaughn* Index indicates that documents 35, 56, and 57 were referred to different agencies for consideration. Although plaintiff includes these documents in the list of its disputed items, it does not say why it challenges their withholding. Therefore, the Court deems these documents properly withheld. As for document 65, the VA asserts that this document is not responsive, as it is only a tracking location for the physical file at the time. The Court agrees, and deems this document properly withheld.

which reflect the personal opinions of the writer rather than the policy of the agency[ ]" all qualify as deliberative. *Id.* Agencies do not have to go so far as "identif[ying] a specific decision corresponding to each communication," as long as it shows that "the document was generated as part of a definable decision-making process." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011).

### a. The withheld documents are predecisional.

The VA's declarant avers that the withheld records consist of "emails, memos and notes of discussions between officials within VA and the Department of Justice" that relate to "the implementation of the Brady Act" or the MOUs between the VA and the FBI. Knight Decl. ¶ 11(b). The entries in the *Vaughn* Index provide sufficient detail. For example:

> Brady Act White Paper on 2007 Amendments. White Paper – Brady Act Amendments – HR 2640 NICS Improvement Amendments Act (Brady Act Amendments) of 2007 – Discussion of amendments to the Brady Act.

*Vaughn* Index at 2 (referencing Doc. No. 11).

> White paper dated May 8, 1995 – Brady Act legal discussion on definitions "persons who are unlawful users of or addicted to any controlled substance" and "persons who have been adjudicated as mental defective or been committed to a mental institution."

*Vaughn* Index at 12 (referencing Doc. No. 76).

The Court is satisfied that the records concern pre-decisional discussions related to the 1998 and 2012 MOUs between the VA and the FBI and the 2007 Brady Act amendments.

### b. The withheld documents are deliberative.

Moreover, the Court is satisfied that the records at issue are deliberative. As evident in the previous examples, the *Vaughn* Index entries "reflect[] advisory opinions, recommendations and deliberations" that could compromise the VA's decisionmaking process. *See Sears*, 421 U.S. at 150. The *Vaughn* Index describes several instances in which the VA deliberated or discussed

certain standards to be implemented in the MOU or to be changed pursuant to the Brady Act amendments. For instance:

> Responses to Burr concerning VA submission of names of VA beneficiaries to DOJ for inclusion in NICS – Legal Fact Sheet in response to inquiry from Senator Burr regarding authority under which VA began sharing information for NICS list; standard VA uses for beneficiaries; direction given to VA personnel to implementation NICS process, etc.

*Vaughn* Index at 12 (referencing Doc. No. 75).

The VA's *Vaughn* Index indicates that these documents are a "direct part of the deliberative process in that [they] make recommendations or express[] opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). As such, the VA properly withheld the following additional documents pursuant to FOIA Exemption 5: 1, 7, 6, 9, 11, 12, 15, 17, 18, 21, 22, 23, 24, 30, 31, 41, 59, 61, 75, 76, 77, 82, 91, 93.

### iii. Segregability

Even if an agency properly asserts a FOIA exemption, it still must release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The agency bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents. *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993). "[T]he agency must provide a 'detailed justification' for its non-segregability but need not 'provide so much detail that the exempt material would be effectively disclosed.'" *Judge Rotenberg Educ. Ctr., Inc. v. U.S. Food & Drug Administration*, 376 F. Supp. 3d 47, 75 (D.D.C. 2019), quoting *Mead Data Central*, 566 F.2d at 242. "Affidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a *Vaughn* Index describing the

withheld record, suffice." *Id.*, quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

Here, the VA has met its burden of demonstrating that no reasonable segregable materials exists in the withheld documents. First, as discussed above, the VA produced a *Vaughn* Index that described each withheld document with sufficient particularity. Second, the VA's declarant avers that:

> a line by line review was conducted of each record to determine whether any segregable portion could be released. Based on a review of the documents, there was no meaningful, segregable information that could be provided and only the name and telephone numbers of VA personnel would have been released.

Knight Decl. ¶ 18. Taken together, the Court finds that the *Vaughn* Index and declaration establish that the agency met its responsibilities with respect to segregability, and since there is no evidence to the contrary, the Court will grant the VA a presumption of good faith.

## II.      FBI Response

Plaintiff submitted a FOIA request to the FBI on October 21, 2015. David M. Hardy Declaration [Dkt. # 20-5] ("First Hardy Decl.") ¶ 5. The request consisted of three parts, which the parties refer to as items "a," "b," and "c":

> a. each Memorandum of Understanding entered into between the United States Department of Veterans Affairs ("VA") and the United States Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), concerning or relating to submission by the VA to the DOJ/FBI of information on persons to be prohibited from purchasing a firearm, including but not limited to: the Memorandum of Understanding Between the United States Department of Veterans Affairs and the Federal Bureau of Investigation Regarding the National Instant Criminal Background Check System, dated February 27, 2012 (including all amendments, supplements, exhibits, and addenda thereto);
>
> b. all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the providing of information (such as names

of individuals) by the VA to the DOJ/FBI for inclusion in the National Instant Criminal Background Check System ("NICS"), including but not limited to the NICS Index Mental Defective Commitment File, including but not limited to any directive, guidance, policy, instruction, manual, procedure, guideline, standard, internal advice, message, checklist, flow chart, and/or memorandum with respect thereto;

c.  to the extent the FBI itself has custody or control of such records, all communications made by or on behalf of the United States Attorney General ("OAG") to the VA requesting or requiring that the VA submit to the DOJ/FBI information on persons to be prohibited from purchasing a firearm, and all communications from the VA in response thereto (on information and belief, OAG made such a request to the VA in 1998) (this request does not seek the subsequent communications that actually provide information concerning particular individuals).

*Id.*; Ex. A to First Hardy Decl. [Dkt. # 20-5] ("FBI FOIA Request")*.* The FBI acknowledged receipt of the request on November 17, 2015, and the agency, along with its components, conducted a search. First Hardy Decl. ¶ 7; Ex. B to First Hardy Decl. [Dkt. # 20-5].

As to item "a," the FBI produced twelve pages consisting of the February 27, 2012 FBI-VA MOU, which included any amendments, exhibits, or attachments to the MOU. First Hardy Decl. ¶¶ 7–10. The agency did not locate any other MOU between the FBI and the VA concerning persons prohibited from purchasing firearms. *Id.* ¶ 10.

As to item "b," the FBI informed plaintiff that it had located fifty-nine pages of responsive records which it withheld in full pursuant to FOIA Exemption 7(e). First Hardy Decl. ¶ 12; Ex. E to First Hardy Decl. [Dkt. # 20-5]. Thereafter, upon further review, the FBI notified plaintiff that those records were not in fact responsive to the FOIA request, and that its initial assessment was mistaken. *Id.* ¶ 41. Finally, as to item "c," the FBI found no responsive records. *Id.* ¶ 18.

The FBI moved for summary judgment, arguing that it "conducted a reasonable search for responsive records." Defs.' Mem. at 9. Plaintiff responded that the search was plainly inadequate as evidenced by the fact that the agency failed to locate the 1998 MOU between the VA and FBI. Pl.'s Cross-Mot. at 20. Plaintiff also noted that the FBI only searched the following terms:

"Veterans Affairs Gun," "VA Gun," "Veterans Affairs," "VA," "National Instant Criminal Background Check Veterans Affairs," "National Instant Criminal Background Check VA," "NICS Veterans Affairs," and "NICS VA."

*Id.*, citing First Hardy Decl. ¶ 40.  And it listed the "obvious" search terms that were missing:

> (a) ("mental defective" or "mental defectives") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran"); (b) "Brady Act" plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran" or "veterans"); (c) ("firearm" or "firearms") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran" or "veterans"); (d) ("handgun" or "handguns") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran" or "veterans"); and (e) "NICS" plus ("VHA" or "VBA" or "veteran" or "veterans").

*Id.*

In response, the FBI conducted a supplemental search, and agreed with plaintiff to "withdraw its portion of the pending motion for summary judgment."  Partial Consent Mot. for Extension of Remaining Deadlines in Briefing Schedule & for Establishment of Separate Schedule to Address the FOIA Request Directed to the FBI [Dkt. # 24] at 2.  The Court established a briefing schedule to allow the FBI to complete its additional search.  Min. Order (March 14, 2019).

On June 18, 2019, the FBI notified the Court that it had completed its supplemental search, Joint Status Report [Dkt. # 28], and it filed a second declaration detailing its additional search along with its final brief on July 31, 2019.  FBI's Reply Mem. in Supp. of Defs.' Mot. & in Opp. to Pl.'s Cross-Mot. [Dkt. # 29]; Second Decl. of David M. Hardy [Dkt. # 29-1] ("Second Hardy Decl.").  The FBI's declarant states that, "while the FBI does not concede that its original search was not reasonably calculated to locate responsive records, in an effort to resolve this issue in the case," the FBI conducted a search in the Sentinel database using the following additional terms:

> "mental defective," "mental defectives," "Brady Act," "firearm VA," "firearm Veterans Affairs," "firearm veteran," "firearm veterans," "firearms VA," "firearms Veterans Affairs," "firearms veteran," "firearms veterans," "handgun VA," "handgun Veterans Affairs," "handgun veteran," "handgun

veterans," "handguns VA," "handguns Veterans Affairs," "handguns veteran," "handguns veterans," "NICS Veteran," and "NICS Veterans"

Second Hardy Decl. ¶ 8. These are nearly all of the search terms that plaintiff identified as missing in the original search. *Compare* Pl.'s Cross-Mot. at 20 (including "VHA" and "VBA"). The FBI declarant avers that "[t]hrough these searches, the FBI again located no additional responsive records, which confirms the reasonableness of its original search." Second Hardy Decl. ¶ 8.

The agency did, however, locate additional responsive records through another source. The agency declarant states that "[u]pon reviewing Plaintiff's Opposition and Plaintiff's exhibit 5," which was produced by the VA, "the FBI noted two (2) FBI File numbers listed within this this document (66F-HQ-Al238705 and 66F-HQ-C1226323) that did not come up in the FBI's original search." Second Hardy Decl. ¶ 9. Consequently, the FBI conducted an additional search of "these files for any records responsive to [p]laintiff's request." *Id.* As a result, the FBI identified ninety-nine pages of additional responsive material, including the 1998 MOU between the VA and the FBI. *Id.* In the end, the FBI declarant avers that:

> Upon review of this additional material, [the agency] released 37 pages in full; released 22 pages in part with portions withheld pursuant to FOIA Exemptions (b)(6) and (b)(7)(C); withheld 16 pages in full pursuant to FOIA Exemptions (b)(5), (b)(6), and (b)(7)(C); and withheld 24 pages in full because they were duplicative of other pages processed elsewhere within the FBI's supplemental production.

*Id.* ¶ 10; *see also* Ex. 10 to Pl.'s Cross-Reply [Dkt. # 31-3] ("FBI, June 4, 2019 Letter and Document Production").

In its cross-reply plaintiff notes that the "FBI did not provide a *Vaughn* index for the aforementioned withholdings," and observes that the "*59 pages* that were released-in-part by FBI in June 2019 precisely matches the number of pages *(59)* reviewed and previously withheld in their entirety." Pl.'s Cross-Reply at 2 (emphasis in original). Plaintiff complains that, the "FBI's

June 4, 2019 letter does not state whether the 59 pages previously withheld in their entirety . . . are the same as the pages just released, but if so, they clearly have not been released based on any 'supplemental search.'" *Id.* at 2–3. Plaintiff insists that the FBI's search is still inadequate, as evidenced by the fact that "[o]nly a single document released by FBI is dated this decade," which it deems "inconceivable," *id.* at 4–5, and that the FBI inexplicably avoided use of the search terms "VHA" for the Veterans Health Administration and "VBA" for the Veterans Benefits Administration. *Id.* at 5–6.

## A. The FBI's search was adequate.

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), citing *John Doe Agency*, 493 U.S. at 151 and *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.*, quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68. Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *Id.* (finding summary judgment improper where agency's affidavit lacked sufficient detail). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Id.* Additionally,

"[a]gency affidavits are accorded a presumption of good faith." *Safecard Servs., Inc.*, 926 F.2d at 1200.

Here, the FBI has met that burden. The FBI's declarations explain in detail the agency's system of records and why it searched certain databases, as well as the methods employed in conducting the FOIA searches. *See* First Hardy Decl. ¶¶ 31–40; Second Hardy Decl. ¶¶ 7–8. The fact that the search did not turn up additional documents does not rebut the presumption of good faith accorded to the agency. "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Moreover, the D.C. Circuit has stressed that "the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

So while there have been some unexplained anomalies in the process, such as the lack of any documents from the past decade and the failure to unearth the two file numbers where many records were found, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). Here, based on the agency's detailed declarations and the fact that agency conducted a supplemental search based on the search terms plaintiff supplied, the Court finds that the FBI search was reasonable and adequate.

**B.  FBI justified its withholdings and met its segregability requirement.**

Plaintiff faults the FBI for not producing a *Vaughn* Index to justify its withholdings.  Pl.'s Cross-Reply at 2.  However, "an agency need not even create a *Vaughn* Index to justify withholdings."  *Judge Rotenberg Educ. Ctr*, 376 F. Supp. 3d at 65.  As the D.C. Circuit has explained, "an agency may . . . submit other measures in combination with or in lieu of the index itself."  *Judicial Watch*, 449 F.3d at 146.  Ultimately, what matters is whether the agency provided "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data Cent.*, 566 F.2d at 251.

The Court finds that the FBI has met this burden through the detailed justifications provided in the Second Hardy Declaration.  The declarant avers that the agency withheld several drafts of the MOU between the FBI and the VA in full under FOIA Exemption 5 because the documents consist of interagency recommendations and opinions that are deliberative and predecisional.  Second Hardy Decl. ¶ 18; *see also id.* ¶ 11 ("The FBI withheld in full Bates pages 17-cv-1974-17 through 17-cv-1974-30, 17-cv-1974-71, and 17-cv-1974-77 because they were draft, deliberative Memorandums of Understanding protected from disclosure by Exemption 5 and the deliberative process privilege.").  Additionally, the agency declarant justified its partial withholding of personal information under FOIA Exemption 6 and 7(c).  *Id.* ¶¶ 19–26.  The declarant avers that "[f]urther description of the information withheld, beyond what is provided in [the] declaration, could identify the actual exemption information the FBI has protected."  *Id.* ¶ 11.  Because the agency's declaration describes the documents and why they are exempt in enough detail, and the declaration is "not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Casey*, 656 F.2d at 738, the Court finds that withholdings were

proper.

Finally, the agency declarant avers that "[e]very effort was made to provide [p]laintiff with . . . all reasonably segregable, non-exempt information in the responsive records. No reasonably segregable, nonexempt portions have been withheld from [p]laintiff." Second Hardy Decl. ¶ 11. The declarant provides a detailed explanation of the segregability review conducted on the ninety-nine responsive pages, including the pages released in part ("RIP") and those withheld in full ("WIF"):

>Pages RIP: Following the segregability review, RIDS determined 22 pages could be released in part with redactions per the FOIA Exemptions identified herein. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.
>
>Pages WIF: Following the segregability review, RIDS determined 40 pages were required to be withheld in their entirety. Of these pages, RIDS withheld 16 pages per one or more FOIA Exemptions. RIDS determined that all information on these pages was either fully covered by one or more of the cited FOIA exemptions, or determined that any non-exempt information on these pages was so intertwined with exempt material, that no information could be reasonably segregated for release. Segregating any non-exempt information would only result in the release of disjointed words, phrases, or sentences that taken separately or together, would have minimal or no informational content. RIDS determined 24 pages were duplicates of other pages processed elsewhere within the FBI's supplemental production. It is RIDS' policy not to process duplicates as doing so would consume finite FOIA processing resources to provide the public with no additional net information about FBI actions or operations. Accordingly, these 24 pages were withheld from the FBI's supplemental production because they were duplicates of other pages processed elsewhere within the FBI's production.

Second Hardy Decl. ¶ 27. Based on these detailed representations, the Court is satisfied that the FBI has met it segregability requirement.

## III.    DOJ Response

On October 21, 2015, plaintiff submitted a FOIA request to the Office of the Attorney

General ("OAG") at the Department of Justice seeking the following records:

> 1. all communications made by or on behalf of the United States Attorney General ("OAG") to the United States Department of Veterans Affairs ("VA") requesting or requiring that the VA submit to the United States Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), information on persons to be prohibited from purchasing a firearm, and all communications from the VA in response thereto (on information and belief, OAG made such a request to the VA in 1998) (this request does not seek the subsequent communications that actually provide information concerning particular individuals);

> 2. each Memorandum of Understanding entered into between the VA and the DOJ/FBI concerning or relating to submission by the VA to the DOJ/FBI of information on persons to be prohibited from purchasing a firearm, including but not limited to: the Memorandum of Understanding Between the United States Department of Veterans Affairs and the Federal Bureau of Investigation Regarding the National Instant Criminal Background Check System, dated February 27, 2012;

> 3. all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the providing of information (such as names of individuals) by the VA to the DOJ/FBI for inclusion in the National Instant Criminal Background Check System ("NICS"), including but not limited to the NICS Index Mental Defective Commitment File, including but not limited to any directive, guidance, policy, instruction, manual, procedure, guideline, standard, internal advice, message, checklist, flow chart.

Ex. 8 to Compl. [Dkt. # 1-8] ("DOJ FOIA Request").  The DOJ's Office of Information Policy

("OIP") handled the request, and issued a final response on September 22, 2017, "advising

[plaintiff] that records searches had been completed, and that no records responsive to his request

were located."  Decl. of Vanessa R. Brinkmann [Dkt. # 20-2] ("Brinkmann Decl.") ¶ 5.  OIP

conducted its search using the following four search terms: (1) NICS plus "Veterans Affairs," (2)

Firearm plus "Veterans Affairs," (3) Firearms plus "Veterans Affairs," and (4) "National Instant

Criminal Background Check System."  Brinkmann Decl. ¶ 14.  The agency contends that those

keyword searches "were reasonably tailored to locate any responsive records regarding formal communication with the VA on the topics identified in the OAG FOIA request." Defs.' Mem. at 13, citing Brinkmann Decl. ¶ 14. The agency found no responsive records, with the exception of a correspondence control sheet that pertained to a document that was no longer in its custody. Brinkmann Decl. ¶¶ 5,15.

Plaintiff argues that "DOJ OIP's search was neither thorough or reasonably tailored to identify records responsive to Plaintiff's FOIA request," based on the limited search terms it used. Pl.'s Cross-Mot. at 18. Plaintiff lists other "obvious" search terms that were notably absent:

> (a) ("mental defective" or "mental defectives") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran");
>
> (b) "Brady Act" plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran");
>
> (c) ("firearm" or "firearms") plus ("VA" or "VHA" or "VBA" or "veteran" or "veterans");
>
> (d) ("handgun" or "handguns") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran" or "veterans"); and
>
> (e) "NICS" plus ("VHA" or "VBA" or "veteran" or "veterans")

*Id*.

As previously noted, FOIA requires "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena*, 180 F.3d at 325, citing *John Doe Agency*, 493 U.S. at 151 and *Campbell*, 164 F.3d at 28. Here, the agency's four search terms are deficient because they exclude obvious topics such as mental health, which goes to very heart of plaintiff's FOIA request, and commonly used abbreviations. Accordingly, the Court finds that DOJ's search was not "reasonably calculated to uncover all relevant documents," *Oglesby*, 920 F.2d at 68, and the Court will deny the motion for summary judgment as to DOJ and remand the case to the agency.

## IV.    ATF Response

Plaintiff submitted multiple FOIA requests to ATF, but only the October 21, 2015 FOIA

request is at issue here.  That request asked for:

1.  each Memorandum of Understanding or other agreement entered into
    between the United States Department of Veterans Affairs ("VA") and the
    United States Department of Justice ("DOJ"), Bureau of Alcohol, Tobacco,
    Firearms and Explosives ("ATF"), concerning or relating to submission by
    the VA to the DOJ/ATF of information on persons to be prohibited from
    purchasing a firearm (including all amendments, supplements, exhibits, and
    addenda thereto);

2.  all records (including all amendments, supplements, exhibits, and addenda
    thereto) which set out or reflect the providing of information (such as names
    of individuals) by the VA to the DOJ/ATF, for example for inclusion in the
    National Instant Criminal Background Check System ("NICS"), including
    but not limited to the NICS Index Mental Defective Commitment File,
    including but not limited to any directive, guidance, policy, instruction,
    manual, procedure, guideline, standard, internal advice, message, checklist,
    flow chart, and/or memorandum with respect thereto;

3.  to the extent the ATF itself has custody or control of such records, all
    communications made by or on behalf of the United States Attorney
    General ("OAG") to the VA requesting or requiring that the VA submit to
    the DOJ/ATF information on persons to be prohibited from purchasing a
    firearm, and all communications from the VA in response thereto (on
    information and belief, OAG made such a request to the VA in 1998) (this
    request does not seek the subsequent communications that actually provide
    information concerning particular individuals).

Ex. 19 to Compl. [Dkt. # 1-19] ("ATF, Oct. 21, 2015 FOIA Request").  ATF responded to this

request by letter dated October 5, 2017, identifying four responsive documents.  Decl. of Adam C.

Siple [Dkt. # 20-3] ("Siple Decl.") ¶ 15.  The documents consisted of twenty-seven pages that the

agency withheld in full pursuant to FOIA Exemption 5.  *Id.*  Plaintiff challenges ATF's

withholding of only one of these documents:  an "internal briefing" record.  Pl.'s Cross-Mot. at

21.  Plaintiff contends that the agency's "minimal explanation" fails to justify withholding this

document in its entirety under Exemption 5.  *Id.*  Plaintiff also challenges the withholding on

segregability grounds. *See* Pl.'s Reply Br. in Support of Pl.'s Cross-Mot. [Dkt. # 27] at 10 ("ATF has not provided a sufficient explanation that the document contains no segregable information").

### A. ATF justified its withholding under Exemption 5.

Based on the Court's review of the agency's declaration and *Vaughn* Index, as well as its *in camera* review of the document itself, it finds that ATF has established that the disputed record is protected by FOIA Exemption 5 under the deliberative process privilege. As previously stated, the deliberative process privilege applies to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8–9.

ATF's declarant avers that the withheld document is an "[i]nternal briefing paper providing talking points and legal guidance from the Office of the Chief Counsel to ATF's executive staff regarding the applicability of Federal firearms disabilities to VA adjudications." Siple Decl. ¶ 19. He adds:

> The internal briefing paper provided talking points/legal guidance about the Federal firearm disability, 18 U.S.C. § 922(g)(4), and its effect on veterans' ability to purchase a firearm. An attorney in the Office of the Chief Counsel prepared the internal briefing paper/legal guidance for use in advising ATF executive staff on two issues of concern to Congress: NICS and the ability of veterans to purchase a firearm if prohibited by 18 U.S.C. §922(g)(4).

*Id.* ¶ 28. The *Vaughn* Index indicates that the document is three pages long and it similarly describes it as a "draft [of] internal talking points for the media related to compliance with Section 508 of the Rehabilitation Act of 1986." ATF *Vaughn* Index [Dkt. # 20-3] at 2. ATF argues that the talking points are both predecisional and deliberative because they reflect unadopted recommendations to superiors prior to an event, such as a congressional testimony. Siple Decl. ¶ 29; Defs.' Mem. at 21–22.

The Court agrees that the internal talking points fall within the scope of the deliberative process privilege and FOIA Exemption 5. "The creation of a 'talking points' document itself suggests that a public statement was anticipated at the time of its creation, and given that that no official statement has yet been made, the talking points remain ripe recommendations that are ready for adoption or rejection by the Department." *ACLU v. U.S. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 112 (D.D.C. 2010); *see also Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 19 (D.D.C. 2004) (finding that "talking points" constituted "[a] memo making recommendations or presenting options [that] reflect[ed] the essence of internal deliberations that Exemption 5 was designed to protect."). Based on the Court's *in camera* review, as well as the agency's detailed descriptions in its declaration and *Vaughn* Index, the Court is satisfied that the internal talking points are predecisional and deliberative and therefore fall within the scope of Exemption 5.

**B. There is no segregable information.**

ATF's declarant averred that "[ATF] staff reviewed each page of the material . . . to ensure that no additional information could be released . . . [and determined that] the entire briefing paper is protected by (b)(5)." Siple Decl. ¶ 30. The Court found that this statement failed to provide reasonable specificity, and ordered ATF to produce the document for *in camera* review. Min. Order (Sept. 13, 2019); Notice of Compliance with Court Order [Dkt. # 32].

Based on its *in camera* review, the Court finds that the factual information contained in the document was "inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004). ATF's "selection of the facts thought to be relevant clearly involves the formulation or exercise of . . . policy-orientated judgment or the process by which policy is formulated." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (internal quotation omitted). Therefore, the Court grants summary judgment in favor of ATF.

**CONCLUSION**

For the reasons stated, the Court will grant in part and deny in part defendants' motion for summary judgment, and it will grant in part and deny in part plaintiff's motion for summary judgment. Judgment is entered in favor of the VA, FBI, and ATF. The case is remanded to the DOJ to conduct an adequate search. A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  September 30, 2019