# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WATKINS LAW & ADVOCACY, PLLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1974 (ABJ) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On September 25, 2017, plaintiff Watkins Law & Advocacy, PLLC filed this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking six records responsive to requests made to the United States Department of Justice ("DOJ"), the United States Department of Veterans Affairs ("VA"), the Federal Bureau of Investigation ("FBI"), and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in October and November 2015. Compl. [Dkt. # 1].  Citing the Brady Handgun Violence Prevention Act of 1993 ("Brady Act"), Public Law 103-159, 107 Stat. 1536, plaintiff sought records concerning "inter-agency agreements" which were tied "to allegedly *financially* incompetent veterans . . . reported [by the VA] to DOJ, FBI, and ATF."  Compl. ¶¶ 1, 30 (emphasis in original).

After defendants processed plaintiff's requests, the parties filed cross-motions for summary judgment on the four requests that remained in dispute.  *See* Defs.' Mot. for Summ. J. [Dkt. # 20] ("Defs.' First Mot."); Pl.'s Cross-Mot. for Summ. J. [Dkt. # 21] ("Pl.'s First Cross-Mot."). The Court granted in part and denied in part both plaintiff's and defendants' motions,

entering judgment in favor of the VA, FBI, and ATF, and remanding one request to DOJ "to conduct an adequate search."  *Watkins Law v. U.S. Dep't of Veterans Affairs*, 412 F. Supp. 3d 98, 123 (D.D.C. 2019); *see also* September 30, 2019 Order [Dkt. # 33] ("Sept. 2019 Order"); September 30, 2019 Mem. Op. [Dkt. # 34] ("Sept. 2019 Mem. Op.").

On January 31, 2020, DOJ – the only defendant that remains – completed its supplemental search for responsive documents and made its release to plaintiff.  *See* Def.'s Status Report (Jan. 31, 2020) [Dkt. # 37] at 1.  In May 2020, the parties renewed their cross-motions for summary judgment with respect to the remanded request.  Def.'s Renewed Mot. for Summ. J. [Dkt. # 40] ("Def.'s Renewed Mot."); Pl.'s Renewed Cross-Mot. for Summ. J. and Opp. to Def.'s Renewed Mot. [Dkt. # 42] ("Pl.'s Renewed Cross-Mot.").  The matter is now fully briefed,[1] and the Court will once again grant and deny each motion in part.  It finds that the search on remand was adequate; DOJ must produce the two redacted reports to Congress in full; and the agency properly withheld the disputed Office of Legal Policy ("OLP") memorandum under Exemption 5.

## BACKGROUND

The factual and legal background of this case was laid out in detail in the Court's previous opinion.  *See* Sept. 2019 Mem. Op. at 2–4 (discussing the history of the Gun Control Act of 1968, the Brady Handgun Violence Prevention Act of 1993, and the memoranda of understanding that

---

1    *See also* Def.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 40] ("Def.'s SOF"); Pl.'s Mem. in Opp to Def.'s Mot. and in Supp. of Cross-Mot. for Summ. J. [Dkt. # 42-1] ("Pl.'s Mem."); Pl.'s Statement of Facts in Resp. to Def. [Dkt. # 42-8] ("Pl.'s Opp. to Def.'s SOF"); Pl.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 42-9] ("Pl.'s SOF"); Def.'s Mem. in Opp. to Pl.'s Renewed Cross-Mot. [Dkt. # 45] ("Def.'s Opp."); Def.'s Reply in Supp. of Renewed Mot. [Dkt. # 46] ("Def.'s Reply"); Pl.'s Cross Reply in Supp. of Renewed Cross-Mot. [Dkt. # 47] ("Pl.'s Cross Reply"); Decl. of Seth A. Watkins [Dkt. # 42-2] ("First Watkins Decl."); Decl. of Seth A. Watkins [Dkt. # 47-1] ("Second Watkins Decl."); Def.'s Notice of Compliance with Ct. Order for *In Camera* Submission [Dkt. # 48].

govern the VA's submission of information to DOJ, FBI, and ATF concerning individuals to be prohibited from purchasing firearms for "alleged financial incompetency"). Therefore, the Court will only summarize the facts pertaining to the remaining request at issue here.

In October 2015, plaintiff submitted a FOIA request to the Office of the Attorney General ("OAG") at DOJ seeking the following records:

> 1. all communications made by or on behalf of the United States Attorney General ("OAG") to the United States Department of Veterans Affairs ("VA") requesting or requiring that the VA submit to the United States Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), information on persons to be prohibited from purchasing a firearm, and all communications from the VA in response thereto . . . ;
>
> 2. each Memorandum of Understanding entered into between the VA and the DOJ/FBI concerning or relating to submission by the VA to the DOJ/FBI of information on persons to be prohibited from purchasing a firearm . . . ; [and]
>
> 3. all records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the providing of information (such as names of individuals) by the VA to the DOJ/FBI for inclusion in the National Instant Criminal Background Check System ("NICS"). . . .

Ex. 8 to Compl. [Dkt. # 1-8] ("FOIA Request"). In accordance with agency policy, the request was processed by the Office of Information Policy ("OIP").[2] OIP conducted its original search using four search terms: (1) NICS plus "Veterans Affairs"; (2) firearm plus "Veterans Affairs"; (3) firearms plus "Veterans Affairs"; and (4) "National Instant Criminal Background Check System." Decl. of Vanessa R. Brinkmann [Dkt. # 20-2] ("First Brinkmann Decl.") ¶ 14. A final response was issued in September 2017 that "no records responsive to [plaintiff's] request were located." *Id.* ¶ 5.

---

2    "OIP is responsible for processing FOIA requests for records within the OIP and from six senior leadership offices of the Department of Justice, specifically the Offices of the Attorney General, the Deputy Attorney General ("ODAG"), and the Associate Attorney General ("OASG"), and the Offices of Legislative Affairs ("OLA"), Legal Policy ("OLP"), and

Defendant moved for summary judgment on December 10, 2018, and the Court denied the motion in part on the grounds that "the four search terms [were] deficient because they exclude[d] obvious topics such as mental health, which goes to the very heart of plaintiff's FOIA request, [as well as] commonly used abbreviations." Sept. 2019 Mem. Op. at 25.  The Court found that the previous search terms were "not 'reasonably calculated to uncover all relevant documents,'" and remanded the request to OIP to conduct a supplemental search using the terms identified by plaintiff.  *Id*., quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The amended terms were:

> (a) ("mental defective" or "mental defectives") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran");
>
> (b) "Brady Act" plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran");
>
> (c) ("firearm" or "firearms") plus ("VA" or "VHA" or "VBA" or "veteran" or "veterans");
>
> (d) ("handgun" or "handguns") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran" or "veterans"); and
>
> (e) "NICS" plus ("VHA" or "VBA" or "veteran" or "veterans").

Sept. 2019 Mem. Op at 25.[3]

OIP conducted the supplemental search using the additional terms across the same locations and using the same methods as in the original search.  Second Brinkmann Decl. ¶¶ 5, 10. On January 31, 2020, OIP reported to plaintiff that "fifty-two pages containing records responsive

---

Public Affairs ("PAO")."  Def.'s Opp. at 7 n.1, citing Decl. of Vanessa R. Brinkmann [Dkt. # 40-2] ("Second Brinkmann Decl.") ¶ 1; *see also* Joint Status Report (Mar. 18, 2020) [Dkt. # 39] at 1 n.1.

[3]     Plaintiff appealed the decision, and the appeal was dismissed on March 12, 2020. *See Watkins Law v. U.S. Dep't of Veterans Affairs*, No. 19-5341, 2020 WL 3002126, at *1 (D.C. Cir. Mar. 12, 2020); May 5, 2020 Mandate [Dkt. # 41]; March 12, 2020 Order [Dkt. # 41-1].

to [the] request were located."   Ex. A to Second Brinkmann Decl. [Dkt. # 40-2] ("Final Response Letter").

Of the fifty-two pages released to plaintiff, some were reports provided to Congress by DOJ's Office of Legislative Affairs ("OLA").   Defendant released sections of the reports as responsive, but redacted other sections it categorized as "non-responsive."   Second Brinkmann Decl. ¶ 18.   Some of those redactions appeared on the same page as responsive material. *Id.* ¶¶ 26–30.

The release also included an August 23, 2013 memorandum drafted by the Principal Deputy Assistant Attorney General in the Office of Legal Policy ("OLP"), directed to the Deputy Attorney General ("DAG").   Second Brinkmann Decl. ¶ 32.   But five pages of the memorandum contained excisions made pursuant to Exemption 5 of FOIA.  *Id.* ¶ 6.

Upon the timely filing of the parties' renewed cross-motions and submission of the three records that remain in dispute for *in camera* review, *see* Min. Order (Mar. 3, 2021), the pending cross-motions for summary judgment are ripe for decision.

## LEGAL STANDARD

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   "[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 247–48.  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate.  *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006).  A plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability

of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

ANALYSIS

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.  Second, the agency must show that whatever "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).  Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

The motions raise three issues:  the adequacy of the search on remand, the redaction of non-responsive portions of the two reports to Congress, and the withholding of the bulk of the OLP memorandum under Exemption 5.

## I.     The supplemental search was adequate.

An agency's search for documents in response to a FOIA request is adequate if it is "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999); *see also Oglesby*, 920 F.2d at 68; *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Affidavits that demonstrate the adequacy of a search may be rebutted "only by showing that the

agency's search was not made in good faith,"[4] *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993),
or if a review of the record raises "substantial doubt" about the sufficiency of the search.
*Valencia-Lucena*, 180 F.3d at 326.

Defendant has submitted a declaration of Vanessa R. Brinkmann, Senior Counsel in the
Office of Information Policy ("OIP").  Second Brinkmann Decl. ¶ 1.  She attests that the agency
conducted a second search, to locate documents responsive to plaintiff's FOIA request for
information exchanged between the VA and DOJ regarding NICS reporting and mental health
standards applied to veterans under the Brady Act, using the five more expansive Boolean searches
proposed by plaintiff.[5]  Defendant submits that this rectified the deficiency the Court identified in
its earlier opinion, and judgment should be entered in its favor.  *See* Sept. 2019 Mem. Op. at 25.

Plaintiff argues that defendant should have broadened the locations searched to include the
FBI and other sections within DOJ, specifically the Office of Legal Policy ("OLP"), because the

---

4      *See also Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

5      A direct comparison of the original and supplemental searches' terms demonstrates that
the latter's terms are broader than the former's.

| Original Search Terms | Supplemental Search Terms |
|---|---|
| -- | ("mental defective" or "mental defectives") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran") |
| -- | "Brady Act" plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran") |
| firearm plus "Veterans Affairs" and firearms plus "Veterans Affairs" | ("firearm" or "firearms") plus ("VA" or "VHA" or "VBA" or "veteran" or "veterans") |
| -- | ("handgun" or "handguns") plus ("VA" or "VHA" or "VBA" or "Veterans Affairs" or "veteran" or "veterans") |
| "National Instant Criminal Background Check System" and NICS plus "Veterans Affairs" | "NICS" plus ("VHA" or "VBA" or "veteran" or "veterans") |

*Compare* First Brinkmann Decl. ¶ 14, *with* Second Brinkmann Decl. ¶ 10.

supplemental search returned responsive records which suggest that additional responsive records may be found there.

But the Court has already entered judgment in favor of the FBI, finding that its search was adequate.  *See Watkins Law*, 412 F. Supp. 3d at 117–19 (holding that the search for responsive documents conducted by the FBI was adequate).

Moreover, the FOIA request at issue was specifically directed to the Office of the Attorney General ("OAG") – not to the DOJ as a whole.[6]  DOJ regulations specify that "each component [of the Department] handl[es] requests for its records," 28 C.F.R. § 16.1(c), and the agency's declarant explains that when a requester explicitly identifies the office from which it is seeking records, the Initial Request Staff searches for responsive material in that office. Second Brinkmann Decl. ¶ 8.  Also, the issue that prompted the remand related to search terms, and not the locations searched, and plaintiff agreed in the March 2020 joint status report to the Court that "the FOIA request to the Office of Attorney General . . . is the only request that currently remains at issue in this litigation."  Joint Status Report (Mar. 18, 2020) [Dkt. # 39] at 1.

The mere fact that the search unearthed some records from other components within the agency does not mean that the search was unduly narrow.  The declaration details the search performed by OIP, and the specific database it used – the Departmental Executive Secretariat Database – which "does not solely contain OAG records."  Second Brinkmann Decl. ¶ 10.  In fact, defendant produced some responsive documents outside of OAG records, which it avers "were incidentally located during the course of OIP's search for OAG records, which reflected that data

---

6    *See* Ex. A to First Brinkmann Decl. [Dkt. # 20-2] ("FOIA Request Summary Report") at 11 (plaintiff directing the FOIA request via "Attn: Office of the Attorney General (OAG)").

was shared by the VA with the DOJ generally, [and] OIP processed these records as a matter of administrative discretion." *Id.*

Finally, plaintiff contends that the time period used for the search on remand should have been extended.  The supplemental search was conducted using the original requested date range, which ended in 2015, Second Brinkmann Decl. ¶ 5, and defendant extended it "through September 2017 when OIP issued its [first] final response."  First Brinkmann Decl. ¶ 14.  As other courts in this district have concluded, the use of a cut-off date need only be reasonable under the circumstances, *see Negley v. FBI*, No. 11-5296, 2012 WL 1155734, at *1 (D.C. Cir. Mar. 28, 2012) (upholding district court's conclusion that the FOIA request date was a reasonable cut-off for defendant's search), and it is sensible "to avoid an endless cycle of judicially mandated reprocessing." *McClanahan v. DOJ*, 204 F. Supp. 3d 30, 47 (D.D.C. 2016), citing *Pub. Citizen v. U.S. Dep't of State*, 276 F.3d 634, 642 (D.C. Cir. 2002).  Here, defendant searched an additional two years of records, and its decision to stop at that point was reasonable.

This supplemental search, a process "in which plaintiff was both consulted and involved," appears reasonably targeted to find documents responsive to the FOIA request.  *Ecological Rights Found. v. EPA*, No. 19-980 (BAH), 2021 WL 535725, at *11 (D.D.C. Feb. 13, 2021).  Because defendant has "demonstrate[d] beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents,'" *Ancient Coin*, 641 F.3d at 514, quoting *Valencia-Lucena*, 180 F.3d at 325, and plaintiff has not offered any evidence of bad faith or pointed to evidence in the record to raise doubts about OIP's efforts, defendant is entitled to summary judgment as to the adequacy of the supplemental search.

## II.    DOJ improperly withheld portions of records on the grounds that they were non-responsive.

The records released to plaintiff included an undated report entitled, "Report to Congress Pursuant to Requirements of the NICS Improvement Amendments Act of 2007 (Public Law 110-180)" and a March 2016 report with the same title.  Ex. 2 to Pl.'s Opp. [Dkt. # 42-4] ("Undated Report"); Ex. 3 to Pl.'s Opp. [Dkt. # 42-5] ("2016 Report"). But defendant redacted certain portions of the records on the grounds that they were not responsive to the FOIA request.  It relies on the guidance OIP issued in 2017 after the D.C. Circuit's decision in *American Immigration Lawyers Ass'n v. Exec. Office for Immigration Review ("AILA")*, 830 F.3d 667 (D.C. Cir. 2016), as well as subsequent FOIA cases in which courts permitted some segmenting of lengthy documents into responsive and non-responsive records.  *See Cause of Action Inst. v. DOJ*, 435 F. Supp. 3d 368 (D.D.C. 2020); *Shapiro v. CIA*, 247 F. Supp. 3d 52 (D.D.C. 2017).

In *AILA*, the plaintiff submitted a FOIA request to the Executive Office for Immigration Review, seeking records related to complaints about immigration judges' conduct. 830 F.3d at 669.  When the agency made its production, it withheld portions of responsive records that it deemed to be non-responsive.  *Id*.  The Court held that FOIA "does not provide for withholding responsive but non-exempt records or for redacting nonexempt information within responsive records." *Id.* at 677.  "[O]nce an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record – i.e., as a unit – except insofar as the agency may redact information falling within a statutory exemption." *Id.*, citing 5 U.S.C. §§ 552 (a)(3)(A), (b).

The *AILA* opinion did resolve the question of whether a single document could be comprised of multiple records, however.  The Court stated that it had "no cause to examine the

11

issue" when it was not raised by the parties, but it went on to observe that the term "record" is not defined in the Act, and that agencies themselves "in effect define a 'record' when they undertake the process of identifying records that are responsive to a request."  830 F.3d at 678.  The Court also emphasized that DOJ guidance "addresses the issue of documents that cover multiple, unrelated topics," and that its recommendation includes "considerations for agencies to take into account when determining whether it is appropriate to divide such a document into discrete 'records.'"  *Id*.

Here, defendant states that it divided the "sections" of the responsive reports into discrete records "based on natural breaks between these sections based on the distinct aspects of the National Instant Criminal Background Check System . . . addressed within the report." Def.'s Reply at 7.  The declarant acknowledges that "all sections of the report[s] relate to the NICS."  Second Brinkmann Decl. ¶ 28.  But she states that the agency redacted portions that did not specifically relate to "the relationship between DOJ and the VA" in the NICS reporting context.  *Id*.

> OIP defined these records at the section rather than paragraph or bullet point level because OIP determined that the section headers and surrounding text within the section provided important context, even to the extent it focused on other Executive Branch agencies.
>
> OIP also determined that each appendix to the reports that consisted of charts containing data acquired from states and Executive Branch agencies, was a responsive record to the extent it contained data received from the VA.  For each appendix that contained such VA data, OIP defined the entire appendix as a responsive record, so the VA data could be viewed in context with other data within the same chart.

Second Brinkmann Decl. ¶¶ 28–29.

Plaintiff submits that OIP's subdivision of the documents in reliance on the 2017 guidance was improper because the guidance was adopted without formal notice-and-comment rulemaking,

and that it violates the Administrative Procedure Act ("APA") because it is "arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law."  Pl.'s Cross Reply at 3.  But this is a FOIA case, and the validity of the agency policy under the APA is not properly before the Court, so the Court will decline the invitation to issue an advisory opinion on the subject.  *See also Cause of Action*, 453 F. Supp. 3d at 379.

The Court agrees, though, that defendant improperly withheld portions of the two reports. In *Cause of Action*, the Court found that DOJ could fairly divide reports consisting of a set of responses to multiple questions posed by Congress into distinct records because the questions were entirely unrelated:   each "Question for the Record" ("QFR") was "essentially a separate communication," 453 F. Supp. 3d at 376, and so the inclusion of every QFR in one document was not "necessary to provide context or helpful background information."  *Id.* at 377.[7]

But there is nothing similar to lift the reports here out of the general rule that a responsive record must be produced in its entirety.  Both documents are short reports covering a single topic related to plaintiff's FOIA request, and therefore, the Court will enter judgment in plaintiff's favor on this issue.  Defendant must produce the reports to plaintiff in full, as the sections withheld provide important context that is indivisible from the rest of the document.

### III.    The redaction of the 2013 OLP memorandum under Exemption 5 was appropriate.

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  It encompasses the deliberative process privilege, which protects

---

7    Similarly, defendant's reliance on *Shapiro* is misplaced.  There, the court found that where documents encompassed "multiple, unrelated topics," it was acceptable to divide responsive from non-responsive records above the paragraph-level.  247 F. Supp. 3d at 75.

"documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9, quoting *Sears*, 421 U.S. at 151. To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

A document is predecisional if "it was generated before the adoption of an agency policy," and it is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. "[R]ecommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency[ ]" all qualify as deliberative. *Id.* An agency need not "identif[y] a specific decision corresponding to each communication," as long as it shows that "the document was generated as part of a definable decision-making process." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011).

Defendant relies on the deliberative process privilege to justify its withholding of five of the fifty-plus pages of responsive material identified in the supplemental search under Exemption 5 of FOIA, stating that the contents of the "2013 Memorandum" were both predecisional and deliberative in nature.

14

**A.  The 2013 Memorandum is predecisional.**

Defendant's declarant avers that the withheld memorandum was sent to the Deputy

Attorney General by the OLP:

> to discuss certain issues surrounding the implementation of a Presidential
> Memorandum, to provide recommendations from OLP to the [Deputy
> Attorney General] on how the DAG should direct the Department to
> proceed on tackling these issues and why the recommended course of action
> should be taken, and to seek a final approval or disapproval from the DAG
> on OLP's recommended course of action.

Second Brinkmann Decl. ¶ 32.  The unredacted portion of the record further supports a finding

that the memorandum was prepared to aid in decision-making:  the subject is "NICS Agency

Guidance – Implementation Plan Issues"; the first paragraph states that an "implementation plan"

was requested under the Presidential Memorandum; and the report announces that "several

issues . . . require decisions" and the Principal DAG at OLP "recommend[s] proceeding as

outlined."  Ex. 1 to Pl.'s Renewed Cross-Mot. [Dkt. # 42-3].

Based on this showing, the Court is satisfied that the 2013 Memorandum is a pre-decisional

document relating to the issues arising from improving reporting records to NICS.

**B.  The 2013 Memorandum is deliberative.**

The declaration also takes the position that the memorandum is deliberative, as it

encompasses a number of "recommendations, evaluations of issues that were arising, opinions,

and analysis provided by subordinate DOJ staff to a superior."  Second Brinkmann Decl. ¶ 35.

The declarant also reports that in the course of processing the FOIA request, "OIP learned that the

substance of th[e] memorandum was ultimately discussed orally at a meeting, with certain

sub-recommendations being approved and other being disapproved."  *Id*. ¶ 32.

The Court's *in camera* review confirms that the redacted material is deliberative in nature;

the memorandum was a "direct part of the deliberative process" that was drafted explicitly to

inform senior level staff of issues and provide recommendations for solutions. *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

### C.  DOJ properly concluded that the 2013 Memorandum is not segregable.

Once a defendant has properly asserted a FOIA exemption, it still must release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  The agency bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents. *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993).  "[T]he agency must provide a 'detailed justification' for its non-segregability but need not 'provide so much detail that the exempt material would be effectively disclosed.'" *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 75 (D.D.C. 2019), quoting *Mead Data Central*, 566 F.2d at 242.

Defendant has met its burden of demonstrating that it has reasonably segregated the withheld material within the 2013 Memorandum.  The declarant described the withheld portion of the document with sufficient particularity, and she avers that:

> OIP conducted a line-by-line review of this recommendation memorandum in order to segregate information for release to Plaintiff.  OIP released header information, introductory information regarding background information for the subject matter of the memorandum, sentences reflecting the fact that OLP was making a recommendation on these matters, and the unsigned approval/disapproval signature block.  Within the introductory information, it is visibly apparent that OIP segregated at the sentence level, dividing a paragraph for release in part.  OIP ultimately determined that it could not effectively segregate factual information or sub-recommendations within this memorandum because they were inextricably intertwined with the analysis, recommendations, evaluations, and opinions of subordinate staff.

Second Brinkmann Decl. ¶ 36.  Based on this information and the Court's own review of the document, the Court agrees that defendant properly withheld the disputed record pursuant to Exemption 5, and it will grant summary judgment in favor of defendant on this claim.

**CONCLUSION**

For these reasons, the Court will grant in part and deny in part defendant's renewed motion for summary judgment, and it will grant in part and deny in part plaintiff's renewed cross-motion for summary judgment.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 17, 2021