**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WATKINS LAW & ADVOCACY, PLLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-1974 (ABJ) |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

On September 26, 2017, plaintiff Watkins Law & Advocacy, PLLC, filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the U.S. Department of Veterans Affairs ("VA"), the U.S. Department of Justice ("DOJ"), and the Federal Bureau of Investigation ("FBI"), and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Compl. [Dkt. # 1].  The case challenges the agencies' responses to FOIA requests seeking records about the process by which the names of certain veterans and other VA beneficiaries are added to a background check system that identifies persons barred from possessing firearms for having been adjudicated as lacking mental capacity.  *Id.*

After defendants processed plaintiff's requests, they moved for summary judgment in 2018.  [Dkt. # 20].  Plaintiff opposed that motion, and cross-moved for summary judgment. [Dkt. # 21]. On September 30, 2019, the Court denied in part and granted in part plaintiff's motion, and denied in part and granted in part defendants' motion and remanded one request to DOJ to "conduct an adequate search."  [Dkt. # 34].  Specifically, the Court granted summary judgment to

the FBI and DOJ on the adequacy of their searches and to the VA on its withholding of documents under Exemption 5 based on the deliberative process and attorney-client privileges. *Id.* The Court granted summary judgment in favor of plaintiff on the remaining claims – none of which are at issue at this stage. *Id*.

Plaintiff appealed,[1] and the D.C. Circuit affirmed in part this Court's grant of summary judgment in favor of the FBI and DOJ, but vacated in part and remanded the award of summary judgment to the VA. Opinion, *Watkins Law*, Case No. 21-5108 [Dkt. # 2013116]; *see also Watkins Law & Advocacy, PLLC v. U.S. Dep't of Just., et al.*, 78 F.4th 436 (D.C. Cir. 2023).[2] The Court of Appeals held that the VA "did not adequately explain its basis for invoking the deliberative-process and attorney-client privileges to justify its withholdings." *Id.* at 450. It instructed this Court to "assess whether the VA has carried its burden to justify the withholdings" and to "determine whether the VA released all segregable information." *Id*. at 452. Accordingly, the only claims currently before the Court are those involving the VA.

Following remand, plaintiff and the VA filed the cross-motions for summary judgment that are pending before the Court. The motions are fully briefed. *See* Def.'s Mot. for Summ. J. [Dkt. # 62] and Mem. in Supp. of Def.'s Mot. for Summ. J. ("VA MSJ") [Dkt. # 62-1]; Def.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 62-2]; Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. VA MSJ and Cross-Mot. for Summ. J. [Dkt. # 64] ("Pl.'s Opp./x-MSJ"); Pl.'s Resp. to Def.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 64-4] and [Dkt. # 65-

---

1    *See* Notice of Appeal, *Watkins Law & Advocacy, PLLC v. U.S. Dep't of Just., et al.* ("*Watkins Law*"), Case No. 21-5108 (D.C. Cir. May 19, 2021) [Dkt. # 1899335].

2    The parties later renewed their cross-motions for summary judgment with respect to the one request that had been remanded to DOJ. The Court again granted in part and denied in part each motion. *See* Dkt. # 50. Because that ruling only concerned the claims involving DOJ, it is not relevant here.

4]; Def.'s  Reply in Further Supp. of its Mot. for Summ. J. and VA MSJ and Opp. to Pl.'s Cross-Mot. for Summ. J. [Dkt. # 70] ("VA Reply"); Pl.'s Reply in Supp. of Pl.'s Cross-Mot. for Summ. J. [Dkt. # 71] ("Pl.'s Reply").  On February 23, 2026, the Court directed the VA to deliver the documents at issue for *in camera* review to assist it in making a responsible *de novo* determination. Feb. 23, 2026 Minute Order; *see also Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978).

For the reasons set forth below, the Court will **GRANT** defendant's motion for summary judgment, and it will **DENY** plaintiff's motion.

## BACKGROUND

The factual and legal background of this case is detailed in the Court's memorandum opinion granting in part and denying in part the previous summary judgment motions.  *See* Mem. Op. (Sept. 19, 2019) [Dkt. # 34] at 2–4 (discussing the history of the Gun Control Act of 1969, the Brady Handgun Violence Prevention Act of 1993, and the memorandum of understanding that VA's submission of information to DOJ, FBI, and ATF concerning individuals to be prohibited from purchasing firearms).  Therefore, the Court will only summarize the facts pertaining to the remaining requests involving the VA.

In October 2015, plaintiff submitted a FOIA request to the VA seeking the following records:

> [A]ll records (including all amendments, supplements, exhibits, and addenda thereto) which set out or reflect the VA's approved agency decision-making procedures concerning whether the name of a veteran is to be reported, identified, or otherwise referred for inclusion in the Mental Defective File of the National Instant Criminal Background Check System ("NICS") database (also known as the NICS Index Mental Defective Commitment File), in effect at any time during 2013 to the present, including but not limited to any directive, guidance, policy, instruction, manual, procedure, guideline, standard, internal advice, message, checklist, flow chart, and/or memorandum with respect thereto (e.g., setting forth the procedure by which the VA may make a determination that an individual is "incompetent" with respect to handling his or her benefit payments such

> that a fiduciary must be appointed, with the individual then facing prohibitions under the Brady Act); and

> [A]ll records, from 2010 to the present, indicating the total number of names of veterans reported, identified, or otherwise referred by the VA each year (or month or quarter) for inclusion in the Mental Defective File of the National Instant Criminal Background Check System ("NICS") database (also known as the NICS Index Mental Defective Commitment File) (e.g., requester seeks summary records indicating the total number of veterans reported annually for inclusion in the Mental Defective File of NICS).

Mem. Op. (Sept. 19, 2019) at 6–7.[3]  The VA directed its components, the VA Office of General Counsel ("VA OGC"), the Veterans Benefits Administration ("VBA"), and the VA Office Public and Intergovernmental Affairs ("OPIA"), to conduct searches in response to the request.  *Id*. at 7. Between November 2017 and April 2018, VA OGC, VBA, and OPIA separately produced a set of non-exempt records.  The agency produced some of the records in part, but withheld others in full pursuant to FOIA Exemption 5 under the deliberative process privilege and the attorney-client privilege.  *Id*.  The VA provided a *Vaughn* Index to support its justifications for the withheld documents.  *See* Decl. of Tracy Knight & *Vaughn* Index [Dkt. # 20-4] at 17–32 (Dec. 10, 2018).

In September 2017, plaintiff filed this lawsuit, initially challenging seventy-one (71) records, which were numbered in the VA's original *Vaughn* Index.  Compl. [Dkt. # 1]; Decl. of Tracy Knight & *Vaughn* Index at 17–32.  On December 10, 2018, and January 11, 2019, the parties cross-moved for summary judgement.  *See* Defs.' Mot. for Summ. J. [Dkt .# 20]; Pl.'s Cross-Mot. [Dkt. # 21-1].  On September 30, 2019, the Court denied in part and granted in part plaintiff's motion, and denied in part and granted in part defendant's motion and remanded one request that is not relevant at this stage of the proceeding.  Mem. Op. (Sept. 19, 2019) at 10–16 [Dkt. # 34].

---

3       On November 11, 2015, plaintiff submitted a second FOIA request to the VA.  November 11, 2015 FOIA Request, Ex. 4 to Compl. [Dkt. # 1-4].  Plaintiff initially challenged the scope of the search, but in its original cross-motion for summary judgment, plaintiff stated that this "request is no longer at issue."  Pl.'s Cross-Mot. [Dkt. # 21] at 16–17.

With respect to the VA, the Court found that the agency met its burden of demonstrating that the records were shielded from disclosure under Exemption 5 because they were protected by the attorney-client privilege and the deliberative process privilege.  *Id.*

On appeal to the D.C. Circuit, plaintiff challenged the VA's withholding of sixty-seven (67) records pursuant to FOIA Exemption 5 under both the attorney-client privilege and the deliberative process privilege.  *Watkins Law*, 78 F.4th at 451.  (Plaintiff did not contest four records on the VA's original *Vaughn* Index on appeal).  The D.C. Circuit found that "the VA failed to adequately set out its basis for asserting the deliberative-process and attorney-client privileges as to the withheld documents."  *Id*. at 452.  The Court observed that the agency's declaration described the withheld records at a "very high level of generality" and did not use "reasonably specific detail" to "demonstrate that the information withheld logically falls within the claimed exemption."  *Id*. at 451–452, citing *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014).  The Court also found that the VA did not "'specifically identify[] the reasons why a particular exemption is relevant' to a particular document or 'correlat[e] those claims with the particular part of a withheld document to which they apply.'"  *Id*. at 452, citing *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977).  The case was remanded with these instructions:

> On remand, the VA may disclose the challenged documents or further elaborate on its rationale for invoking the deliberative-process and attorney-client privileges for the challenged documents.  The district court can then assess whether the VA has carried its burden to justify the withholdings and can also determine whether the VA released all segregable information.

*Id.* at 452.

The VA then provided plaintiff with an updated *Vaughn* Index and a declaration from Julio W. Valdivieso, an attorney from the VA's Information and Administrative Law Group, Office of General Counsel, who had been newly assigned to this case.  *See, e.g.*, Ex. 1 to VA MSJ. [Dkt. # 62-3] ("Valdivieso Decl.") and Ex. 2 to VA MSJ. ("Dec. 20, 2023 *Vaughn* Index").  The VA also produced eight (8) of the documents at issue to plaintiff in full.  *See id.*; Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J and in Supp. of Pl.'s Cross-Mot. for Summ. J. [Dkt. # 64-1] ("Pl.'s Mem.") at 8.  Plaintiff stated in turn that it is no longer contesting Items # 79 and 80.  Pl.'s Mem. at 8 n.2.  This leaves fifty-seven (57)[4] records still in dispute, which the VA maintains are exempt under Exemption 5 as protected by the attorney-client privilege and the deliberative process privilege.  And for the first time, the VA also asserts that thirteen (13) documents are also protected by the attorney work product privilege.  *See* Dec. 20, 2023 *Vaughn* Index.[5]

### STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

---

4    Plaintiff challenges the withholding of fifty-seven (57) records listed in the Dec. 20, 2023 *Vaughn* Index as follows: Items # 1, 3–12, 16–18, 21–26, 30, 31, 34, 39–43, 46, 47, 49, 51, 58–61, 63, 66–73, 75–77, and 83–91.

5    In its brief, the agency claims that fifteen of the records are protected from disclosure under the attorney work product doctrine. VA MSJ at 3, 23. However, the agency only identified thirteen records in its accompanying citations. *Id*. at 23. After reviewing the Dec. 20, 2023, *Vaughn* Index, the Court finds that only thirteen records are at issue under the work product doctrine. *See* Dec. 20, 2023 *Vaughn* Index.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party and a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation modified), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006).  However, a plaintiff cannot rebut the good faith presumption afforded to an agency's

supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential"), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless

they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

The cross-motions raise two issues: (1) whether the VA appropriately withheld records under Exemption 5 on the grounds that they are shielded by the attorney-client privilege, the attorney work product protection, or the deliberative process privilege; and if so, (2) whether the VA produced all reasonably segregable information.

## I.        The VA has carried its burden to justify its withholdings under Exemption 5.

FOIA Exemption 5 bars disclosure of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 522(b)(5). A document may be properly withheld under Exemption 5 only if it satisfies "two conditions: its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).[6] Exemption 5 encompasses evidentiary privileges "in the civil discovery context, including material that would be protected under the attorney-client privilege, the attorney work product privilege, or the executive deliberative process privilege." *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989) (internal quotation marks omitted).

Here, of the fifty-seven (57) records still in dispute, the VA asserts that both the attorney-client and deliberative process privilege cover fifty-two (52) of the records.[7] It asserts the attorney-client

---

6        Here, given that all of the documents on the *Vaughn* Index originated from the VA, there is no dispute that they came from a government agency. *See* 5 U.S.C. § 552(b)(5).

7        On remand, the VA continues to assert both the attorney-client and deliberative process privilege for Items # 3, 4, 6–12, 16–18, 21–24, 26, 30, 31, 34, 39, 41–43, 46, 47, 49, 51, 58–61, 63, 66–73, 76, 77, and 83–91.

privilege alone for three (3) records (Items # 5, 25, 40), and the deliberative process privilege alone for two (Items # 1, 75).  Finally, the VA invokes the attorney work product privilege for thirteen (13) records.[8]

### A.  The VA appropriately applied the attorney-client privilege.

The attorney-client privilege protects confidential communications between clients and their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).  Although Exemption 5 "does not itself create a government attorney-client privilege," the privilege

> [H]as a proper role to play in exemption five cases . . . . In order to ensure that a client receives the best possible legal advice, based on a full and frank discussion with his attorney, the attorney-client privilege assures him that confidential communications to his attorney will not be disclosed without his consent. We see no reason why this same protection should not be extended to an agency's communications with its attorneys under exemption five.

*In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998), quoting *Mead Data Central*, 566 F.2d at 252. The privilege also protects communications from attorneys to their clients that "rest on confidential information obtained from the client."  *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997), quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984).  In the FOIA context, the agency is often the "client" and the agency's lawyers are the "attorneys" for purposes of the privilege.  *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998), citing *Coastal States*, 617 F.2d at 863.  Here, the VA would be the "client", and the VA OGC would serve as the VA's "attorneys" for purposes of the privilege.

---

8       The VA asserts the attorney work product over the following documents on the *Vaughn* Index:  Items # 31, 40, 58, 59, 60, 63, 72, 86, 87, 88, 89, 90, and 91.

The VA contends that the fifty-five (55) documents withheld based on the attorney-client privilege generally include "legal advice from Department attorneys regarding compliance with the Brady Act information sharing provisions."  VA MSJ at 6.  Specifically, it asserts that the documents include legal guidance from Department lawyers to VA components about "laws that apply when reporting information to the [National Instant Criminal Background Check System], when that information should be reported, [and] justifications for reporting it," as well as how program offices should implement the Brady Act amendments.  *Id*.  The VA also submits that the documents contain legal advice and analysis from agency lawyers to the Secretary of Veterans Affairs about a variety of legal issues and guidance on responding to requests for information from Congress and other federal agencies.  *Id*. at 6–7.  According to the VA, disclosing the withheld information to plaintiff would deprive agency leadership and staff of the "benefit of confidential legal advice from Department attorneys" and would have a chilling effect on future attorney-client communications related to the VA's obligations under the Brady Act.  VA MSJ at 8.

After carefully reviewing the revised *Vaughn* Index, the VA declaration, and conducting an *in camera* review of the withheld documents, the Court finds that the attorney-client privilege applies to fifty-three (53) of the fifty-five (55) records withheld on these grounds.  To begin with, the Court has compared the VA's original *Vaughn* Index [Dkt. # 20-4] with the revised *Vaughn* Index [Dkt. # 62-4], and it finds that the VA has complied with the D.C. Circuit's instructions that the *Vaughn* Index must "specifically identify[] the reasons why a particular exemption is relevant" to particular documents and "correlat[e] those claims with the particular part of a withheld document to which they apply."  *Watkins Law*,  78 F.4th at 452, citing *Mead Data*, 566 F.2d at 251.  As demonstrated by the specific examples below, the Court finds that the *Vaughn* Index includes "reasonably specific detail" showing that the records contain communications between

agency attorneys to the relevant VA components and program offices that are their clients regarding what laws apply, how they should be interpreted, and what the agency's legal obligations are. *See Watkins Law*, 78 F.4th at 452. With the exception of Items # 23 and 77, the descriptions show that each of the documents is either a communication between agency attorneys and staff, or a memorandum memorializing legal advice that was provided. The following examples illustrate the level of detail provided throughout the *Vaughn* Index:

| Overall Item | File Title | Document Description | FOIA Exemptions | Justification for Withholding |
|---|---|---|---|---|
| 16 | FW Senate Committee question – Fiduciary vs NICS | Email thread in which VA official from another component requests legal analysis from OGC regarding request for information from Department of the Army based on a request from a Senate Committee. | 5 (Attorney-Client, Deliberative Process), 6 | Attorney-client privileged because record consists of a request for legal advice from client regarding whether and how to comply with a request for information from another federal agency. |
| 25 | nics-vba | Unsigned memorandum from OGC to VBA concerning the implementation of Brady Act | 5 (Attorney-Client) | Attorney-client privileged because record consists of OGC's legal analysis concerning the implementation of the Brady Act, including what to expect based upon its meetings with the FBI. |

Both examples contain detailed descriptions that establish that the communications were made by attorneys for the purpose of providing legal advice to their clients. The descriptions provided in the entries for Items # 3, 4, 5-12, 17-18, 21-22, 24, 26, 30, 31, 34, 39, 40-43, 46, 47, 49, 51, 58-61, 63, 66-73, 76, and 83-91 are similarly specific and compliant.

Plaintiff challenges the withholding of Item # 25, arguing that "if the record memorializes VA's meetings with the FBI, that information is unlikely to be privileged and is likely to be segregable." Pl.'s Opp./xMSJ at 16. But Item # 25 is not a report of a non-privileged meeting with the FBI. It is a draft version of a memorandum from the General Counsel to two agency undersecretaries, conveying information about what the agency is being asked to do and advising the agency about the steps to be undertaken. It is plainly an attorney-client communication, and after reviewing the document *in camera*, the Court agrees with the defendant that one cannot segregate any factual information in the memo about the FBI's requests from the guidance about what needs to be done to assist the FBI in implementing the new law.

Plaintiff also challenges the VA's withholding of Item # 5 solely under the attorney-client privilege. The record is described in the *Vaughn* Index as "March 2025 document from [VA attorney] to [VA program office] regarding routine use and disclosing info on incompetent Vet to DOJ for inclusion in NICS." Dec. 20, 2023 *Vaughn* Index at 2. The VA asserted in the *Vaughn* Index that the record "memorializes advice to client, VBA, concerning potential legal justifications for disclosing information to another federal agency." *See id.* Such a communication between attorney and client falls squarely within the attorney client privilege. *See Coastal States*, 617 F.2d at 863 (recognizing that "counseling" intended to "assist the agency in protecting its interests" can qualify for the attorney client privilege).

Plaintiff objects to the withholding of two draft letters (Items # 23 and 77), under the attorney-client privilege.  The letters were drafted by attorneys, and while they were transmitted from lawyers to the Secretary of Veterans' Affairs ("Secretary"), they do not appear to contain or refer to the content of any private attorney-client communications.  Item # 23 is a draft letter a VA attorney wrote for the Secretary to send to the then-FBI director regarding legal implications of the steps that the VA was taking to comply with the 2007 Brady Act amendments.  Dec. 20, 2023 *Vaughn* Index at 11.  Item  #77 is a draft letter from then-Department Secretary to ATF, which was drafted by an attorney. *Id.* at 30.  The VA states that it provides legal guidance to the Secretary about the impact that proposed ATF regulations could have for the VA.  *Id*.  Neither draft letter was publicly released.  VA Reply at 2–3.  The VA asserts that these drafts are "in effect legal advice to [the] Secretary regarding what he should say." *Id*.  The Court has reviewed Items # 23 and 77 *in camera* and finds that the letters themselves lack the key element needed to establish the attorney-client privilege—a transmission of confidential information between an attorney and client.  *See Coastal States*, 617 F.2d at 863 (instructing courts to "narrowly construe" the attorney-client privilege, which "protects only those disclosure necessary to obtain informed legal advice which may not have been absent the privilege").  Nor is the Court persuaded by the VA's argument that these memos were "in effect" legal advice to the Secretary, as nothing on the face of those documents gives that indication.  Though these documents may qualify for other privileges, the fact that the letters were drafted by attorneys does not transform those letters into an attorney-client communication.  Accordingly, the Court finds that Items # 23 and 77 are not covered by the attorney-client privilege.

Other than Items #23 and 77, based on the descriptions contained in the VA's *Vaughn* Index with respect to each document, the statements by the agency declarant, and given its *in*

*camera* review, the Court is satisfied that the VA has provided "reasonably specific detail" demonstrating these fifty-three (53) documents "relate[] to a legal matter for which the [VA] has sought professional legal advice," *see Mead Data Cent.*, 566 F.2d at 252, and therefore were properly withheld pursuant to FOIA Exemption 5.  Accordingly, the VA properly withheld the following fifty-three (53) documents, pursuant to FOIA Exemption 5:  Items # 3, 4, 5–12, 16–18, 21–22, 24, 25–26, 30, 31, 34, 39, 40–43, 46, 47, 49, 51, 58–61, 63, 66–73, 76, and 83–91.

## B.  The VA's assertion of the attorney work product privilege is untimely.

The attorney work product privilege "protects written materials lawyers prepare 'in anticipation of litigation,'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998), quoting Fed. R. Civ. P. 26(b)(3), to include "factual materials prepared in anticipation of litigation," "opinions, legal theories, and the like."  *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).  Thus, it affords "a working attorney . . .  a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories."  *Coastal States*, 617 F.2d at 864.

Following remand, the VA asserted for the first time that thirteen (13) of the withheld records are exempt from disclosure as "attorney work product."  VA MSJ at 10; *see* Valdivieso Decl. ¶ 5.  Counsel presently representing the agency before this Court has averred that the OGC attorneys who were working on issues related to the records only recently informed him that they considered these records to be "extremely high-visibility," and that the document "inspired passionate controversy" such that "the threat of litigation was generally thought amongst OGC attorneys to be a possibility at the time that many of these records were created."  Valdivieso Decl. ¶ 5.  The declaration does not provide information about whether this information was available

to the previously assigned attorney or address any other circumstances that would explain why the information or the potential availability of the exemption was unknown until this point.

The D.C. Circuit has "plainly and repeatedly" instructed in FOIA cases that "as a general rule, [the government] must assert all exemptions at the same time, in the original district court proceedings." *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 764 (D.C. Cir. 2000), citing *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 795 F.2d 205, 208 (D.C. Cir. 1986). "[T]he delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of efficient, *prompt*, and full disclosure of information, and with interests of judicial finality and economy." *Maydak*, 218 F.3d at 764 (emphasis in original). An exception to this rule exists in "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive personal, private information unless the court allows it to make an untimely exemption claim." *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 854 F.3d 675, 680 (D.C. Cir. 2017), citing *Maydak*, 218 F.3d at 767. The VA claims that its prior failure to assert the attorney work privilege was due to "inadvertent error"– specifically, that prior agency counsel "did not consider whether some of the records that were prepared by attorneys would qualify as work product." VA Reply [Dkt. # 70] at 5, citing Valdiveso Decl. ¶ 5. And the new declaration does not reflect that the documents contain information that would compromise national security or personal privacy; it simply suggest that the material is, or was, controversial.

The Court finds that the VA has failed to demonstrate the "extraordinary circumstances" that would justify the assertion of the attorney work product privilege for the first time at this late stage. The declaration the VA relies upon to establish the alleged "inadvertent error" is entirely

16

conclusory and only offers the threadbare statement that prior counsel "did not consider" the application of the privilege. *See* Valdiveso Decl. ¶ 5. It fails to explain any details about *why* prior counsel did not consider this privilege, including whether the information that these documents were created in anticipation of litigation was available to prior counsel, and if not, why that was the case. The Court agrees with plaintiff that "sloppiness or incompetence alone . . . are insufficient to justify invocation of work product protection for the first time on remand." Pl.'s Reply at 6. Moreover, the VA makes no attempt to satisfy the second part of the D.C. Circuit's test that releasing such information would "compromis[e] national security" or otherwise release "sensitive, personal, or private information." *See Maydak*, 218 F.3d at 767. Given the VA's vague and insubstantial excuses, the Court finds that the agency may not rely on the attorney work product privilege to withhold these thirteen (13) documents under Exemption 5 at this stage of the litigation.[9]

## C. The VA appropriately applied the deliberative process privilege.

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9, quoting *Sears*, 421 U.S. at 151.

---

[9]     Although the Court finds that the VA may not invoke the attorney work product privilege at this stage of litigation for the first time, this conclusion has little practical impact because all thirteen of the documents over which the VA asserted this protection are otherwise exempt under Exemption 5 as attorney-client or deliberative process privileges.

To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States*, 617 F.2d at 866.

Here, the VA asserts the deliberative process privilege for fifty-four (54) records. *See* Dec. 20, 2023 *Vaughn* Index. Of those documents, the Court has already found that fifty-three (53) of the records were properly withheld under Exemption 5 based on the attorney-client privilege, leaving only two documents for which the VA asserts the deliberative process alone (Items # 1, 75). Nonetheless, it has reviewed the *Vaughn* Index description for all fifty-four (54) documents the VA withheld under the deliberative process privilege to evaluate whether that privilege provides an independent basis for withholding the documents.

### 1. The documents are predecisional.

"A document is pre-decisional if it was 'prepared in order to assist an agency decisionmaker in arriving at this decision' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975). The agency's characterization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the document as its final view on the matter." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). Predecisional documents can lose their status if they are adopted as the agency's final position on the matter, but the privilege still protects information that was part of the agency's "group thinking in the process of working out its policy." *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 8 (D.C. Cir. 2014), quoting *Sears*, 421 U.S. at 153. To show that a document is predecisional, the agency need not identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the

18

deliberative process.  *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000), citing *Coastal States,*

617 F.2d at 868.

The VA submits that the records are predecisional because they "consist of

recommendations and non-final proposals on how the Department should interpret and implement

the Brady Act."  VA MSJ at 14.  It maintains that the withheld records include draft guidance to

agency staff about topics such as a proposed ATF regulation and a draft Department policy

regarding patients' rights.  *Id.*  The VA also asserts the privilege with respect to legal memoranda

and other documents reflecting advice from attorneys written to assist the VA in developing

policies related to coordination with other governmental agencies.  *Id.*

The Court has carefully reviewed the entries for these records in the *Vaughn* Index and

finds that they provide sufficient detail to establish that they are predecisional and prepared in

order to "assist an agency decisionmaker in arriving at [a] decision."  *Formaldehyde Inst.*, 889

F.2d at 1122.  The following examples are illustrative:

| Overall Item | File Title | Document Description | FOIA Exemptions | Justification for Withholding |
|---|---|---|---|---|
| 1 | Field Guidance Brady Law and VA | Draft 2 page document from OPA/Media Relations – discussion regarding implementation of Bract Act ? NICS | 5 (Deliberative Process) | Draft version of outdated guidance to the field. Predecisional as to the agency decision of what guidance would be released to the field. Deliberative because these were still just recommendations on interpretations of implementation of law, including |

| | | | | a timeline for further guidance to be issued. |
|---|---|---|---|---|
| 9 | Analysis of Enrolled Bill HR 2640 12202007 | Legal Analysis of ER HR 2640 | 5 (Attorney-Client, Deliberative Process), 6 | . . . Predecisional to the Secretary's decision regarding whether to recommend POTUS's signing of the bill, and deliberative because analysis was made to assist that decision . . . Furthermore, the record is unsigned, and it is not clear whether it is a draft. |

Both examples show that the withheld documents reflect pre-decisional discussions and recommendations within the VA about policies and positions that the agency may or may not take regarding the Brady Act.  With respect to Item #1, the document is predecisional because it is a "draft" written before the VA determined what guidance it would ultimately issue to field offices about Brady Act compliance.  *See* VA MSJ at 6.  Plaintiff takes issue with the fact that the VA characterized this record as a "draft" for the first time following remand.  *See* Pl.'s Opp./MSJ at 11–12.  But this is precisely what the D.C. Circuit instructed the VA to do when it remanded the case and instructed the agency to "further elaborate on its rationale for invoking the deliberative-process and attorney-client privileges for the challenged documents."  *Watkins Law*, 78 F.4th at 452.  The same conclusion applies to Item # 9, which based on the VA's description, reflects the

agency's deliberations about whether the VA Secretary should recommend that the President sign a particular bill into law.

As for Items # 23 and 77 – the two letters drafted by attorneys for the Secretary for which the attorney-client privilege is unavailable and the deliberative process privilege would be the only basis for invoking exemptions – the Court finds them to be pre-decisional recommendations intended to "assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). To find otherwise would run the risk of "prematurely disclos[ing] the views of the agency." *Coastal States,* 617 F.2d at 866. The Court is satisfied that these amended justifications provided by the VA on the *Vaughn* Index for Items # 1, 3, 6–12, 16–18, 21–24, 26, 30, 31, 34, 39, 41–43, 46, 47, 49, 51, 58–61, 63, 66–73, 75 76, 77, and 83–91 are predecisional.

### 2. *The withheld documents are deliberative.*

A document is deliberative if it "reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. FDA*, 449 F.3d at 151, quoting *Coastal States*, 617 F.2d at 862. The exemption "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), citing *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63 (D.C. Cir. 1974). But the agency "cannot simply rely on generalized assertions that disclosure could chill deliberations." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (citation omitted).

As is evident in the previous examples, the *Vaughn* Index entries "reflect[] advisory opinions, recommendations deliberations" that could compromise the VA's decision-making process, if disclosed. *Sears*, 421 U.S. at 150 (internal citation modified). Item # 1 contains the

agency's preliminary recommendations about what the Brady Act compliance policy should be, including a timeline of when further guidance would be issued. *See* Dec. 20, 2023 *Vaughn* Index at 1. Item # 9 contains legal analysis used to advise the Secretary in formulating his recommendation to the President about whether he should sign a particular bill. *Id*. at 6. Throughout the *Vaughn* Index, the VA has provided the same level of detail about the withheld documents showing that they were created as the agency weighed various options, deliberated about issues, and ultimately formulated final policies and public positions. *See, e.g.*, Item # 75 (draft response to Senator's question regarding how the Department submits information to the FBI Background check). *Id*. at 29. Thus, the Court finds that these documents were "deliberative."

Given the Court's finding that the withheld documents are both predecisional and deliberative, it holds that the VA properly withheld the following fifty-four (54) documents, pursuant to FOIA Exemption 5: 1, 3, 6–12, 16–18, 21–24, 26, 30, 31, 34, 39, 41–43, 46, 47, 49, 51, 58–61, 63, 66–73, 75 76, 77, and 83–91. This includes the two documents for which the deliberative process privilege was the only basis for the exemption that was proffered, that is, Items # 1 and 75, and two for which the Court found the attorney-client privilege to be unavailable: Items # 23 and 77.

## II.    The VA has released all segregable information.

"Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (collecting cases). An agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc.*, 566 F.2d at 260; *Johnson v. Exec. Off. for U.S. Atty's*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In

order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Cent., Inc.*, 566 F.2d at 261.  Moreover, the agency must also consider whether there would be foreseeable harm from disclosure of otherwise exempt information, including whether partial disclosure of information is possible. *Leopold v. Dep't of Commerce*, 94 F.4th 33, 378 (D.C. Cir. 2024).

Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman,* 494 F.3d at 1117, citing *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. U.S. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

The VA's declarant avers that when conducting a "line-by-line review" of each record, he "considered whether portions of each record could be segregated and released without concern." Valdivieso Decl. ¶ 3.  He determined that he found "no meaningful, segregable information in the records that was not covered by an applicable FOIA exemption." *Id*.  The declaration further states that to the extent that any portions of the withheld records contain facts, such facts reflect agency deliberations. *Id*. ¶ 7.

Considering the *Vaughn* Index in combination with the VA's declaration, as well as the Court's *in camera* review of the documents, the Court is satisfied that the agency has met its segregability requirement.  *See Juarez*, 518 F.3d at 61 (finding a "page-by-page" review and

averments in a declaration that each piece of information withheld could not be reasonably segregated to be sufficient for defendant to meet segregability requirement); *see also Johnson*, 310 F.3d at 776 (holding that agency fulfilled its obligation to show why a document could not be further segregated based on declarant's statement that she personally conducted a line-by-line review of each document withheld to make the segregability determination).  Taken together, the *Vaughn* Index's detailed description of each withheld document and the statements made by the VA's declarant establish that the agency met its burden with respect to segregability.

## CONCLUSION

For all of these reasons, the Court finds that the VA met its burden of providing "reasonably specific detail" to "demonstrate that the information withheld logically falls within the claimed exemption" and that the withholdings are appropriate under FOIA Exemption 5.  *See Watkins Law*, 78 F.4th at 452.  Accordingly, the Court will **GRANT** the VA's motion for summary judgment [Dkt. # 62] and **DENY** plaintiff's cross-motion for summary judgment [Dkt. # 64].  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 24, 2026